Laurence M. Rosen, Esq. (SBN 219683)
THE ROSEN LAW FIRM, P.A.
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

MARK DALPOGGETTO, Individually and On Behalf of All Others Similarly Situated,

      Plaintiff,

      v.

WIRECARD AG, MARKUS BRAUN, BURKHARD LEY, ALEXANDER VON KNOOP, JAN MARSALEK, and SUSANNE STEIDL,

      Defendants.

Case No. 2:19-cv-00986

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

JURY TRIAL DEMANDED

Plaintiff Mark DalPoggetto ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings,

– 1 –

wire and press releases published by and regarding Wirecard AG ("Wirecard" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants who purchased or otherwise acquired the publicly traded securities of Wirecard from April 7, 2016 through February 1, 2019, both dates inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and §78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

3.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

4.      Venue is proper in this judicial district pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as the Company's business has an effect in this District, and the alleged misstatements entered, and subsequent damages occurred, in this District.

5.      In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail,

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

1  interstate telephone communications and the facilities of the national securities
2  exchange.

3  ## PARTIES

4  6.  Plaintiff, as set forth in the accompanying Certification, purchased the
5  Company's securities at artificially inflated prices during the Class Period and was
6  damaged upon the revelation of the alleged corrective disclosure.

7  7.  Defendant Wirecard, a technology company, purports to provide
8  outsourcing and white label solutions for electronic payment transactions
9  worldwide. The Company is headquartered in Aschheim, Germany. Wirecard
10  securities trade OTC under the ticker symbols "WCAGY" and "WRCDF."

11  8.  Defendant Markus Braun ("Braun") has served as the Company's
12  Chief Executive Officer ("CEO") since 2002. Braun is a member of the Company's
13  Management Board.

14  9.  Defendant Burkhard Ley ("Ley") served as the Company's Chief
15  Financial Officer ("CFO") from the beginning of the Class Period until December
16  31, 2017. Ley served as a member of the Company's Management Board.

17  10.  Defendant Alexander von Knoop ("Knoop") has served as the
18  Company's CFO since January 1, 2018. Knoop is a member of the Company's
19  Management Board.

20  11.  Defendant Jan Marsalek ("Marsalek") has served as the Company's
21  Chief Operating Officer ("COO") and a member of the Company's Management
22  Board since February 2010.

23  12.  Defendant Susanne Steidl ("Steidl") serves on the Company's
24  Management Board and as Chief Product Officer ("CPO"), effective January 1,
25  2018.

26  13.  Defendants Braun, Ley, Knoop, Marsalek, and Steidl are herein
27  referred to as "Individual Defendants."

28  14.  Each of the Individual Defendants:

– 3 –

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

(a)     directly participated in the management of the Company;

(b)     was directly involved in the day-to-day operations of the Company at the highest levels;

(c)     was privy to confidential proprietary information concerning the Company and its business and operations;

(d)     was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e)     was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f)     was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g)     approved or ratified these statements in violation of the federal securities laws.

15.     The Company is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

16.     The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to the Company under *respondeat superior* and agency principles.

17.     The Company and the Individual Defendants are referred to herein, collectively, as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Materially False and Misleading Statements

18.     On April 7, 2016, the Company issued a press release containing a web link to its financial results for the fiscal year ended December 31, 2015 (the "2015

– 4 –

Annual Report"). The 2015 Annual Report was signed by Defendants Braun, Ley and Marsalek. The 2015 Annual Report contained signed statements by Defendants Braun, Ley and Marsalek attesting to the accuracy of financial reporting and a fair review of the development and performance of the business, as well as the attendant opportunities and risks.

19.     The 2015 Annual Report stated the Company had a thorough process in place to ensure employees would not misuse (i.e., falsify) information. The 2015 Annual Report stated, in relevant part:

> In addition, the Wirecard Group counteracts internal misuse through a closed concept, starting with the selection of employees and a stringent "need-to-know" principle, through to the monitoring of all data access events. In close cooperation with the Wirecard Group's Data Protection Officer, experts ensure that personal data is processed solely in accordance with the rules and regulations of the applicable data protection laws.

20.     Wirecard's 2015 Annual Report stated the Company had systems in place to "guarantee" the correct accounting of business processes and transactions and to "ensure[] compliance" with accounting regulations and statutory standards. The 2015 Annual Report stated, in relevant part:

> **2.4 Internal control and risk management system relating to the Group financial accounting process**
>
> The Wirecard Group has an internal control and risk management system relating to the (Group) accounting process, in which suitable structures and processes are defined and then implemented within the organisation. This is designed to guarantee the timely, uniform and correct accounting of all business processes and transactions. It ensures compliance with statutory standards, accounting regulations and the internal Group accounting directive, which is binding for all companies included in the consolidated financial statements.

21.     On April 6, 2017, the Company issued a press release containing a web link to its financial results for the fiscal year ended December 31, 2016 (the "2016

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

Annual Report"). The 2016 Annual Report was signed by Defendants Braun, Ley and Marsalek. The 2016 Annual Report contained signed statements by Defendants Braun, Ley and Marsalek attesting to the accuracy of financial reporting and a fair review of the development and performance of the business, as well as the attendant opportunities and risks.

22.     The 2016 Annual Report stated the Company had a thorough process in place to ensure employees would not misuse (i.e., falsify) information. The 2016 Annual Report stated, in relevant part:

> In addition, the Wirecard Group counteracts internal misuse through a closed concept, starting with the selection of employees and a stringent "need-to-know" principle, through to the monitoring of all data access events. In close cooperation with the Wirecard Group's Data Protection Officer, experts ensure that personal data is processed solely in accordance with the rules and regulations of the applicable data protection laws.

23.     Wirecard's 2016 Annual Report stated the Company had systems in place to "guarantee" the correct accounting of business processes and transactions and to "ensure[] compliance" with accounting regulations and statutory standards. The 2016 Annual Report stated, in relevant part:

> **2.4 Internal control and risk management system relating to the Group financial accounting process**
>
> The Wirecard Group has an internal control and risk management system relating to the (Group) accounting process, in which appropriate structures and processes are defined and then implemented within the organisation. This is designed to guarantee the timely, uniform and correct accounting of business processes and transactions. It ensures compliance with statutory standards, accounting regulations and the internal Group accounting directive, which is binding for all companies included in the consolidated financial statements.

24.     On April 12, 2018, the Company issued a press release containing a web link to its financial results for the fiscal year ended December 31, 2017 (the

– 6 –

"2017 Annual Report"). The 2017 Annual Report was signed by Defendants Braun, Knoop, Marsalek, and Steidl. The 2017 Annual Report contained signed statements by Defendants Braun, Ley, Marsalek, and Steidl attesting to the accuracy of financial reporting and a fair review of the development and performance of the business, as well as the attendant opportunities and risks.

25.     The 2017 Annual Report stated the Company had a thorough process in place to ensure employees would not misuse (i.e., falsify) information. The 2017 Annual Report stated, in relevant part:

> In addition, the Wirecard Group counteracts internal misuse through a closed concept, starting with the selection of employees and a stringent "need-to-know" principle, through to the monitoring of all data access events. In close cooperation with the Wirecard Group's Data Protection Officer, experts ensure that personal data is processed solely in accordance with the rules and regulations of the applicable data protection laws.

26.     Wirecard's 2017 Annual Report stated the Company had systems in place to "guarantee" the correct accounting of business processes and transactions and to "ensure[] compliance" with accounting regulations and statutory standards. The 2017 Annual Report stated, in relevant part:

> **2.4 Internal control and risk management system relating to the Group financial accounting process**
>
> The Wirecard Group has an internal control and risk management system also in relation to the (Group) accounting process, in which appropriate structures and processes are defined and then implemented within the organization. This is designed to guarantee the timely, uniform and correct accounting of business processes and transactions. It ensures compliance with statutory standards, accounting regulations and the internal Group accounting directive, which is binding for all companies included in the consolidated financial statements.

27.     The statements referenced in ¶¶18-26 above were materially false and/or misleading because they misinterpreted and failed to disclose the following

– 7 –

adverse facts pertaining to the Company's business and operations which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) for the period spanning from 2015 to 2018, a senior Wirecard executive in Singapore had been accused of forging and backdating contracts, including falsifying accounts and money laundering; (2) an external law firm commissioned to investigate Wirecard's Singapore office had reportedly found evidence of "serious offences of forgery and/or of falsification of accounts"; (3) Wirecard had downplayed weaknesses in its internal controls over financial reporting and failed to disclose the true extent of those weaknesses; and (4) as a result, Defendants' statements about Wirecard's business, operations and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

**The Truth Begins to Emerge**

28.     On January 30, 2019, *The Financial Times* reported that "[a] senior Wirecard executive was last year suspected of using forged and backdated contracts in a string of suspicious transactions[.]" According to the article, an internal presentation "outlined potential violations of Singapore law, including 'falsification of accounts' and 'money laundering.'" Further, "[t]he whistleblower who briefed the FT on the document was motivated to do so, the person said, out of a concern that no action appeared to have been taken over potentially criminal acts inside a company presenting itself as a blue-chip financial institution."

29.     On this news, shares of WCAGY fell $8.54 per share or nearly 9% to close at $86.66 per share on January 30, 2019. Shares of WRCDF fell $28.10 per share or nearly 15% to close at $161.90 per share on January 30, 2019.

30.     On February 1, 2019, *The Financial Times* reported that "[a]n external law firm commissioned by Wirecard to investigate the payment company's Singapore office found evidence indicating 'serious offences of forgery and/or of falsification of accounts', according to a preliminary report on the inquiry seen by

– 8 –

the Financial Times." According to the article, the lawyers' report stated the following:

> On the face of the evidence uncovered so far, these acts appear to bear out at the very least serious offences of forgery and/or of falsification of accounts/documents under section 477A of Singapore's Penal Code. As these acts were intentional, there are reasons to suspect that they may have been carried out to conceal other misdeeds, such as cheating, criminal breach of trust, corruption and/or money laundering.

31.     On this news, shares of WCAGY fell $16.60 per share or nearly 20% to close at $66.64 per share on February 1, 2019. Shares of WRCDF fell $30.17 per share or over 18% to close at $133.88 per share on February 1, 2019.

32.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

33.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired the publicly traded securities of Wirecard during the Class Period (the "Class") and were damaged upon the revelation of the alleged corrective disclosure. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

34.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, the Company's securities were actively traded OTC. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from

– 9 –

records maintained by the Company or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

35.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

36.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

37.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)    whether Defendants' acts as alleged violated the federal securities laws;

(b)    whether Defendants' statements to the investing public during the Class Period misrepresented material facts about the financial condition, business, operations, and management of the Company;

(c)    whether Defendants' statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

(d)    whether the Individual Defendants caused the Company to issue false and misleading SEC filings and public statements during the Class Period;

(e)    whether Defendants acted knowingly or recklessly in issuing false and misleading SEC filings and public statements during the Class Period;

– 10 –

(f)     whether the prices of the Company's securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

(g)     whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

38.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

39.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

(a)     Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

(b)     the omissions and misrepresentations were material;

(c)     the Company's securities are traded in efficient markets;

(d)     the Company's securities were liquid and traded with moderate to heavy volume during the Class Period;

(e)     the Company traded OTC, and was covered by multiple analysts;

(f)     the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; Plaintiff and members of the Class purchased and/or sold the Company's securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts; and

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

(g)    Unexpected material news about the Company was rapidly reflected in and incorporated into the Company's stock price during the Class Period.

40.    Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

41.    Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### Violation of Section 10(b) of The Exchange Act and Rule 10b-5
### Against All Defendants

42.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

43.    This Count is asserted against the Company and the Individual Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

44.    During the Class Period, the Company and the Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

45.    The Company and the Individual Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they: employed devices, schemes and artifices to defraud; made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under

– 12 –

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

which they were made, not misleading; and/or engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of the Company's securities during the Class Period.

46. The Company and the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

47. Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other personnel of the Company to members of the investing public, including Plaintiff and the Class.

48. As a result of the foregoing, the market price of the Company's securities was artificially inflated during the Class Period. In ignorance of the falsity of the Company's and the Individual Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of the Company's securities during the Class Period in

– 13 –

purchasing the Company's securities at prices that were artificially inflated as a result of the Company's and the Individual Defendants' false and misleading statements.

49.    Had Plaintiff and the other members of the Class been aware that the market price of the Company's securities had been artificially and falsely inflated by the Company's and the Individual Defendants' misleading statements and by the material adverse information which the Company's and the Individual Defendants did not disclose, they would not have purchased the Company's securities at the artificially inflated prices that they did, or at all.

50.    As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

51.    By reason of the foregoing, the Company and the Individual Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the Plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchases of the Company's securities during the Class Period.

## COUNT II

### Violation of Section 20(a) of The Exchange Act
### Against The Individual Defendants

52.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

53.    During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information regarding the Company's business practices.

54.    As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

with respect to the Company's financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

55.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of the Company's securities.

56.     Each of the Individual Defendants, therefore, acted as a controlling person of the Company. By reason of their senior management positions and/or being directors of the Company, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, the Company to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of the Company and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

57.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

B.      Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.      Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

<b><u>DEMAND FOR TRIAL BY JURY</u></b>

Plaintiff hereby demands a trial by jury.

Dated: February 8, 2019                 Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By: /s/Laurence M. Rosen
Laurence M. Rosen, Esq. (SBN 219683)
355 S. Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS