1  BRIAN M. LUTZ, SBN 255976
      blutz@gibsondunn.com
2  MICHAEL J. KAHN, SBN 303289
      mjkahn@gibsondunn.com
3  GIBSON, DUNN & CRUTCHER LLP
   555 Mission Street, Suite 3000
4  San Francisco, CA 94105-0921
   Telephone:  415.393.8200
5  Facsimile:   415.393.8306

6  *Attorneys for Defendants*

7

8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10

11  MARK DALPOGGETTO, Individually          CASE NO. 2:19-cv-00986-FMO-SK
    and On Behalf of All Others Similarly
12  Situated,                               **MEMORANDUM OF POINTS AND**
                                            **AUTHORITIES IN SUPPORT OF**
13                     Plaintiff,           **DEFENDANTS' MOTION TO**
                                            **DISMISS FIRST AMENDED CLASS**
14           v.                             **ACTION COMPLAINT FOR**
                                            **VIOLATION OF THE FEDERAL**
15  WIRECARD AG, MARKUS BRAUN,              **SECURITIES LAWS**
    BURKHARD LEY, ALEXANDER
16  VON KNOOP, JAN MARSALEK, and
    SUSANNE STEIDL,
17                                          **Hearing**:
                     Defendants.           Date:      May 7, 2020
18                                          Time:      10:00 a.m.
                                           Place:     Courtroom 6D
19                                          Judge:     Hon. Fernando M. Olguin

20                                          Action Filed:      February 8, 2019

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................. 1

II. FACTUAL BACKGROUND ............................................................................. 2

III. ARGUMENT ..................................................................................................... 5

    A.    This Action Should Be Dismissed On *Forum Non Conveniens* Grounds. .................................................................................................... 5

        1.    Germany Is An Adequate Alternative Forum. ................................ 5

        2.    The Public And Private Interest Factors Favor Dismissal. .............. 6

    B.    The Defendants Are Not Subject To Personal Jurisdiction In This Court. ........................................................................................................ 9

        1.    Defendants Are Not Subject to General Jurisdiction. .................... 10

        2.    Defendants Are Not Subject to Specific Jurisdiction. .................... 10

    C.    Plaintiff Fails To State A Claim. ............................................................ 14

        1.    Plaintiff Cannot Assert Claims Based On German Securities. ....... 15

        2.    Plaintiff Fails To Plead The "In Connection With" Requirement. .............................................................................. 15

        3.    Plaintiff Fails To Plead A Strong Inference Of Scienter. ............... 17

        4.    Plaintiff Fails To Plead Falsity. .................................................. 19

        5.    Plaintiff Fails To Plead Economic Loss For His F-Shares. ............ 21

IV. CONCLUSION ................................................................................................ 22

Gibson, Dunn & Crutcher LLP

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Air Crash Over Taiwan Straits on May 25, 2002*,
  331 F. Supp. 2d 1176 (C.D. Cal. 2004) ................................................................ 8

*Asahi Metal Indus. Co. v. Super. Ct.*,
  480 U.S. 102 (1987) ............................................................................................ 14

*Ballard v. Savage*,
  65 F.3d 1495 (9th Cir. 1995) ............................................................................. 13

*BlackRock, Inc. v. Schroders PLC*,
  2007 WL 1573933 (S.D.N.Y. May 30, 2007) ..................................................... 6

*Blanco v. Banco Indus. de Venez., S.A.*,
  997 F.2d 974 (2d Cir. 1993) ................................................................................. 9

*Bourassa v. Desrochers*,
  938 F.2d 1056 (9th Cir. 1991) ............................................................................. 9

*Brody v. Transitional Hosps. Corp.*,
  280 F.3d 997 (9th Cir. 2002) ............................................................................. 19

*Carey v. Bayerische Hypo-Und Vereinsbank AG*,
  370 F.3d 234 (2d Cir. 2004) ................................................................................. 6

*Core-Vent Corp. v. Nobel Indus. AB*,
  11 F.3d 1482 (9th Cir. 1993) ............................................................................. 14

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014) ....................................................................................... 1, 10

*In re Daou Sys., Inc.*,
  411 F.3d 1006 (9th Cir. 2005) ........................................................................... 21

*DeHoog v. Anheuser-Busch InBev SA/NV*,
  899 F.3d 758 (9th Cir. 2018) ............................................................................. 17

*Deirmenjian v. Deutsche Bank, A.G.*,
  2006 WL 4749756 (C.D. Cal. Sept. 25, 2006) ................................................... 6

*In re Facebook, Inc. Sec. Litig.*,
  405 F. Supp. 3d 809 (N.D. Cal. 2019) ............................................................... 20

MPA ISO DEFENDANTS' MOTION TO DISMISS
CASE NO. 2:19-cv-00986-FMO-SK

Gibson, Dunn &
Crutcher LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Gulf Oil Corp. v. Gilbert,*
    330 U.S. 501 (1947)...................................................................................... 7

*Holland Am. Line Inc. v. Wartsila N. Am., Inc.,*
    485 F.3d 450 (9th Cir. 2007) ...................................................................... 12

*In re Impac Mortg. Holdings, Inc. Sec. Litig.,*
    554 F.Supp.2d 1083 (C.D. Cal. 2008) ....................................................... 18

*Ins. Co. of N. Am. v. Marina Salina Cruz,*
    649 F.2d 1266 (9th Cir. 1981) .................................................................... 14

*Jui-Yang Hong v. Extreme Networks, Inc.,*
    2017 WL 1508991 (N.D. Cal. Apr. 27, 2017)........................................... 19

*Kleiner v. Spinal Kinetics, Inc.,*
    2016 WL 1565544 (N.D. Cal. Apr. 19, 2016)............................................. 9

*In re LeapFrog Enters., Inc. Sec. Litig.,*
    527 F. Supp. 2d 1033 (N.D. Cal. 2007)..................................................... 18

*Leetsch v. Freedman,*
    260 F.3d 1100 (9th Cir. 2001) ...................................................................... 9

*Lockman Found. v. Evangelical Alliance Mission,*
    930 F.2d 764 (9th Cir. 1991) ............................................................... 5, 6, 7

*Lueck v. Sundstrand Corp.,*
    236 F.3d 1137 (9th Cir. 2001) ...................................................................... 6

*McGee v. Am. Oriental Bioengineering, Inc.,*
    2014 WL 12586107 (C.D. Cal. Sept. 23, 2014)........................................ 18

*In re Mego Fin. Corp. Sec. Litig.,*
    213 F.3d 454 (9th Cir. 2000) ...................................................................... 21

*Metzler Inv. GMBH v. Corinthian Colls., Inc.,*
    540 F.3d 1049 (9th Cir. 2008) ........................................................ 18, 19, 20

*Morrison v. National Australia Bank,*
    561 U.S. 247 (2010).................................................................................... 15

*Nathanson v. Polycom, Inc.,*
    87 F. Supp. 3d 966 (N.D. Cal. 2015)......................................................... 20

*New York State Teachers' Ret. Sys. v. Fremont Gen. Corp*,
2009 WL 3112574 (C.D. Cal. Sept. 25, 2009) ........................................................ 21

*Nordstrom, Inc. v. Chubb & Son, Inc.*,
54 F.3d 1424 (9th Cir. 1995) ........................................................................... 18, 21

*Oakley, Inc. v. Trimera Military Tech., Inc.*,
2016 WL 8794459 (C.D. Cal. Jan. 22, 2016) ......................................................... 2

*Oregon Pub. Employees Ret. Fund v. Apollo Grp. Inc.*,
774 F.3d 598 (9th Cir. 2014) ............................................................................... 15

*Oto v. Airline Training Ctr. Arizona, Inc.*,
247 F. Supp. 3d 1098 (D. Ariz. 2017) ................................................................... 8

*Pinker v. Roche Holdings Ltd.*,
292 F.3d 361 (3d Cir. 2002) ................................................................................ 4

*Piper Aircraft v. Reyno*,
454 U.S. 235 (1981) ................................................................................... 5, 6, 7

*Ranza v. Nike, Inc.*,
793 F.3d 1059 (9th Cir. 2015) ............................................................................ 10

*S.E.C. v. Jammin Java Corp.*,
2016 WL 6595133 (C.D. Cal. July 18, 2016) ......................................................... 11

*San Mateo County Transit Dist. v. Dearman, Fitzgerald and Roberts, Inc.*,
979 F.2d 1356 (9th Cir. 1992) ............................................................................ 13

*Sandoval v. Carnival Corp.*,
2014 WL 12585803 (C.D. Cal. Sept. 15, 2014) ....................................................... 2

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004) ........................................................................ 11, 12

*Sears, Roebuck & Co. v. Sears*,
744 F. Supp. 1297 (D. Del. 1990) ........................................................................ 11

*STM Grp., Inc. v. Gilat Satellite Networks Ltd.*,
2011 WL 2940992 (C.D. Cal. July 18, 2011) ........................................................... 7

*Stoyas v. Toshiba Corp.*,
896 F.3d 933 (9th Cir. 2018) .................................................... 2, 4, 13, 15, 16, 17

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)...........................................................................................17

*Estate of Thomson v. Toyota Motor Corp. Worldwide*,
    545 F.3d 357 (6th Cir. 2008) ...............................................................................8

*Timberlane Lumber Co. v. Bank of Am. Nat'l Trust and Savings Ass'n*,
    749 F.2d 1378 (9th Cir. 1984), overruled on other grounds by *Hartford*
    *Fire Ins. Co. v. Merrett Underwriting Agency*, 509 U.S. 764 (1993) ........................5

*Tuazon v. R.J. Reynolds Tobacco Co.*,
    433 F.3d 1163 (9th Cir. 2006) ..............................................................................5

*Van Schijndel v. Boeing Co.*,
    434 F. Supp. 2d 766 (C.D. Cal. 2006) ..................................................................8

*Velasco v. Americanos USA, LLC*,
    2014 WL 266803 (C.D. Cal. Jan. 10, 2014) .........................................................8

*Westley v. Oclaro, Inc.*,
    897 F. Supp. 2d 902 (N.D. Cal. 2012)................................................................18

*Ziegler v. Indian River County*,
    64 F.3d 470 (9th Cir. 1995) ..................................................................................9

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) ..............................................................................17

**Statutes**

15 U.S.C. § 78u-4(b)(1) ...........................................................................................20

15 U.S.C. § 78u-4(b)(2)(A) .....................................................................................17

15 U.S.C. § 78u-4(e) ...............................................................................................21

Gibson, Dunn &
Crutcher LLP

## I.   INTRODUCTION

This action does not belong in a U.S. court.  As the Court noted at the outset of this case, this action has no nexus to the U.S. because it asserts claims against German defendants based on alleged misconduct in Singapore.  Dkt. 9 at 1-2.  Plaintiff's First Amended Complaint does not change that.  The FAC continues to name only German Defendants, claiming they made false or misleading statements in Wirecard's German securities law filings by omitting alleged accounting fraud that occurred in Wirecard's Singapore subsidiary.  This indisputably non-U.S.-based action should be dismissed for multiple reasons.

First, the Court should dismiss this case on *forum non conveniens* grounds in favor of a German forum.  Courts repeatedly recognize in this context that Germany is an adequate alternative forum.  The same is true here.  As set forth in the supporting declaration of a German law expert, Germany has a robust securities law regime, and permits aggrieved shareholders like Plaintiff to sue defendants for securities fraud. Additionally, the balance of public and private factors weighs heavily in favor of a German forum.  All of the Defendants are German or Austrian residents, Wirecard lists its securities exclusively on German stock exchanges, the allegedly false securities filings were prepared and issued pursuant to German law, and the witnesses and evidence are based almost entirely, and perhaps exclusively, in Germany and Singapore.  Because of the strong nexus to Germany, and the minimal ties to the U.S., this action should be dismissed.

Second, this action should be dismissed for the independent reason that the Court lacks personal jurisdiction over Defendants.  There is no general jurisdiction over Defendants because they are "at home" in Germany, not the U.S.  *Daimler AG v. Bauman*, 571 U.S. 117, 137-39 (2014).  There also is no specific jurisdiction over Defendants because they did not purposefully direct their activities at the U.S. in any way related to Plaintiff's claims.  Plaintiff's only basis for bringing claims in the U.S. is that he allegedly purchased certain Wirecard securities on the U.S. over-the-counter

market, including unsponsored American Depositary Receipts that are "set up without the cooperation of the non-U.S. company." FAC Ex. 5 at 2. Wirecard, however, had *no involvement* in creating or facilitating this U.S.-based trading presence. *See* Declaration of Iris Stoeckl ¶¶ 11-14. Wirecard chose to list its stock *only* on exchanges in Germany. The fact that third parties created a secondary market in the U.S. *without Wirecard's consent* does not, as a matter of law, mean that the Defendants are subject to personal jurisdiction in the United States or in California.

Finally, even if the Court decides that this action and these Defendants are properly before this Court, the FAC still should be dismissed for failure to state a claim under the heightened pleading standards of the Private Securities Litigation Reform Act of 1995 ("PSLRA") and Federal Rule of Procedure 9(b). Because Plaintiff fails to plead with particularity that Wirecard consented to the creation of a U.S.-based trading presence for the securities he owns, the FAC does not allege the "in connection with" requirement of a securities fraud claim. *See Stoyas v. Toshiba Corp.*, 896 F.3d 933, 950-52 (9th Cir. 2018) (affirming dismissal of claims based on unsponsored ADRs). Plaintiff also does not even try to plead scienter: the FAC does not contain a single non-conclusory allegation that the Individual Defendants knew or purposely disregarded that any challenged statement was false. Nor does Plaintiff plead falsity with particularity. The challenged statements have nothing to do with the alleged accounting fraud at issue, and there are no specific facts pleaded showing that any statement by the Defendants was false or misleading.

This action should be dismissed with prejudice.

## II.   FACTUAL BACKGROUND[1]

***Background on Defendants and Wirecard securities.*** Wirecard is an

---

[1] The Court may consider facts outside of the FAC in ruling on the *forum non conveniens* and personal jurisdiction arguments, but may only consider judicially noticeable facts and documents incorporated by reference for the 12(b)(6) arguments. *Sandoval v. Carnival Corp.*, 2014 WL 12585803, at *2-3 (C.D. Cal. Sept. 15, 2014) (Olguin, J.); *Oakley, Inc. v. Trimera Military Tech., Inc.*, 2016 WL 8794459, at *5 (C.D. Cal. Jan. 22, 2016). By summarizing Plaintiff's allegations,

2

MPA ISO DEFENDANTS' MOTION TO DISMISS
CASE NO. 2:19-cv-00986-FMO-SK

*Aktiengesellschaft*, or German stock company, with its "*Sitz*," or effective place of business, in Aschheim, Germany.  ¶ 13; Stoeckl Decl. ¶ 2.  The Individual Defendants are current and former members of Wirecard's *Vorstand*, or Management Board.  *Id.* ¶ 3.  The Individual Defendants all are German or Austrian citizens who live, and have had their offices, in Germany from April 7, 2016 through October 15, 2019 (the "Class Period") and through the current day.  *Id.*[2]

Neither Wirecard nor any of the Individual Defendants had any contacts with the United States during the putative Class Period related to the claims in this action.  For example, in that period (1) Wirecard's Management and Supervisory Board meetings were generally held in Germany (and never in the U.S.), *id.* ¶¶ 4-5; (2) Wirecard's annual shareholder meetings were held only in Germany, *id.* ¶ 6; and (3) Wirecard's annual reports were approved in and distributed from Germany, *id.* ¶ 9.

Critically for purposes of this motion, Wirecard's common stock is listed exclusively on stock exchanges in Germany, and thus Wirecard is subject to the disclosure and reporting requirements of Germany's securities laws.  ¶ 35; Stoeckl Decl. ¶ 7.  Wirecard has never filed materials with the U.S. Securities and Exchange Commission ("SEC") pursuant to U.S. securities laws or regulations.  *Id.* ¶ 8.

Plaintiff nonetheless asserts claims under the U.S. securities laws based on two types of securities that trade over-the-counter ("OTC") in the U.S.:  (1) unsponsored American Depositary Receipts ("ADRs") that reference Wirecard common stock (ticker: WCAGY), and (2) Wirecard common stock sold as so-called "F-shares" (ticker: WRCDF).  ¶¶ 1-2, 36-37, 49, 67.  "ADRs are negotiable certificates issued by a United States depositary institution, typically banks, and they represent a beneficial interest in, but not legal title of, a specified number of shares of a non-United States

---

Defendants do not concede the allegations are true.  Citations in the form of "¶ ___" or "¶¶ __" refer to the paragraphs of the FAC.  Citations to "Lutz Ex. __" refer to the exhibits to the Declaration of Brian M. Lutz, filed concurrently herewith.  Unless otherwise noted, all emphasis is added, and all internal quotation marks and citations are omitted.

[2]  Certain Individual Defendants also live part time in Austria.  *Id.*

MPA ISO DEFENDANTS' MOTION TO DISMISS
CASE NO. 2:19-cv-00986-FMO-SK

Gibson, Dunn & Crutcher LLP

company." *Toshiba*, 896 F.3d at 940. "ADRs may be either sponsored or unsponsored." *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 367 (3d Cir. 2002). Unlike sponsored ADRs which may only be "established pursuant to a contract signed by the foreign issuer," ¶ 47, "[a]n unsponsored ADR is set up without the cooperation of the non-U.S. company," FAC Ex. 5 at 2; *see Pinker*, 292 F.3d 367 ("[a]n unsponsored ADR is established with little or no involvement of the issuer of the underlying security.").

Here, three depositary banks purchased Wirecard's stock and then issued the unsponsored ADRs without any involvement from Defendants. ¶¶ 51-52; Stoeckl Decl. ¶¶ 10-12. Defendants did not consent to the creation of these unsponsored ADRs, and took no steps to help facilitate the trading of these securities in the U.S. *Id.* ¶¶ 12-13. Similarly, Defendants did not consent to the establishment of a secondary market for its common stock to trade as F-shares in the U.S., and Defendants had no involvement in creating or facilitating the trading of these F-shares on the U.S. OTC market. *Id.* ¶ 14. Defendants also have never solicited the purchase of any unsponsored ADRs or F-shares that trade OTC in the U.S. *Id.* ¶ 15.

*Substantive allegations*. In 2018, an employee in Wirecard's Singapore subsidiary was accused of accounting improprieties. ¶ 90. Wirecard immediately launched an internal investigation with the assistance of a Singapore law firm. *Id.* ¶¶ 90-91. Wirecard conducted a "full investigation," but as of "the start of this year [2020] there were still no conclusions" reached as to the employee. ¶ 93.

After the *Financial Times* reported on these "allegations" in January 2019, Singapore law enforcement launched "a probe into alleged fraudulent accounting at six Wirecard subsidiaries." ¶ 94. In March 2019, Wirecard published a summary of findings made during its investigation, which found "no material impact on its financial statements." ¶¶ 100-101; *see* Lutz Ex. 1. The *Financial Times* nonetheless continued to report on the allegations, and other unproven allegations about Wirecard that that *Financial Times* claimed were suspicious. ¶¶ 142-51. Plaintiff alleges these

1   reports caused Wirecard's stock price to decline, which in turn allegedly caused losses

2   in the value of his securities.  *Id.*

### III.   ARGUMENT

4        This action should be dismissed for three independent reasons.  First, under the

5   *forum non conveniens* doctrine, the claims in this action should be brought in

6   Germany, not in this District.  Second, the Defendants are not subject to personal

7   jurisdiction in this Court.  Finally, Plaintiff fails to state a claim against any of the

8   Defendants.

### A.   This Action Should Be Dismissed On *Forum Non Conveniens* Grounds.

10        A case should be dismissed on *forum non conveniens* grounds "if, in view of all

11  the competing considerations, the case is more appropriately tried in another forum."

12  *Timberlane Lumber Co. v. Bank of Am. Nat'l Trust and Savings Ass'n*, 749 F.2d 1378,

13  1386 (9th Cir. 1984), overruled on other grounds by *Hartford Fire Ins. Co. v. Merrett*

14  *Underwriting Agency*, 509 U.S. 764 (1993).  In determining whether to dismiss a case

15  under the doctrine of *forum non conveniens*, courts consider whether (1) an "adequate"

16  alternative forum is available to plaintiff; and (2) a balancing of private and public

17  factors favors dismissal.  *Lockman Found. v. Evangelical Alliance Mission*, 930 F.2d

18  764, 767 (9th Cir. 1991).  Where an adequate alternative forum is more convenient, the

19  court should dismiss the action notwithstanding a plaintiff's choice of forum.  *See*

20  *Piper Aircraft v. Reyno*, 454 U.S. 235, 256 n.23 (1981).  Here, there is no question that

21  Germany is an adequate forum for Plaintiff's claims, and the balancing of public and

22  private interest factors favors dismissal of this case.

### 1.   Germany Is An Adequate Alternative Forum.

24        An alternative forum ordinarily exists when the defendant is "amenable to

25  process" in that forum.  *Piper*, 454 U.S. at 254 n.22.  "This test is easy to pass," so

26  long as a plaintiff can obtain "some remedy" in the alternative forum.  *Tuazon v. R.J.*

27  *Reynolds Tobacco Co*., 433 F.3d 1163, 1178 (9th Cir. 2006).  It is only in "rare

28  circumstances" that an alternative forum is not "adequate," such as where the forum

"does not permit litigation of the subject matter of the dispute" or the remedy provided is "so clearly inadequate or unsatisfactory that it is no remedy at all." *Piper*, 454 U.S. at 254, 255 n.22.

Here, Germany is an adequate alternative forum. First, Defendants are amenable to process in Germany as Plaintiff's service of process pursuant to the Hague Convention demonstrates. Dkts. 52, 59-61.

Second, Plaintiff could bring securities claims in Germany, and, if he prevailed on his claims, he would be afforded a remedy in its courts. *See* Wagner Decl. ¶¶ 12-29. German courts have jurisdiction over Wirecard and its executives. *Id.* ¶¶ 39-46. In Germany, Plaintiff could assert securities law claims based on the same allegations in this action, and if the claims were proven, Plaintiff could recover damages. *See id.* ¶¶ 28-29. This is more than sufficient to make Germany an adequate alternative forum. *See Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1143 (9th Cir. 2001) (the issue is not whether plaintiffs "could bring this [same] lawsuit in [the foreign forum], but rather, whether [the foreign forum] offers a remedy for their losses").[3] This Court should therefore follow numerous other courts in holding that Germany is an adequate alternative forum.[4]

## 2. The Public And Private Interest Factors Favor Dismissal.

The balancing of public and private factors points to Germany as the best forum to hear Plaintiff's claims. Courts consider the following public interest factors: local interest of lawsuit; the court's familiarity with governing law; burden on local courts

---

[3] While an alternative forum is "adequate" regardless of differences in pretrial procedure, *Lockman Found.*, 930 F.2d at 768, Germany offer procedural tools that are substantially similar to those offered by a U.S. District Court, such as pretrial discovery of documents and witness statements. *See* Wagner Decl. ¶¶ 30-38.

[4] *See Deirmenjian v. Deutsche Bank, A.G.*, 2006 WL 4749756, at *10 (C.D. Cal. Sept. 25, 2006) (finding that German law affords an adequate remedy for plaintiffs' class action lawsuit); *Carey v. Bayerische Hypo-Und Vereinsbank AG*, 370 F.3d 234, 237 (2d Cir. 2004) (Germany is an adequate forum); *BlackRock, Inc. v. Schroders PLC*, 2007 WL 1573933, at *7 (S.D.N.Y. May 30, 2007) ("courts in this District have repeatedly found Germany to be an adequate alternative forum").

6

MPA ISO DEFENDANTS' MOTION TO DISMISS
CASE NO. 2:19-cv-00986-FMO-SK

and juries; congestion in the court; and the costs of resolving a dispute unrelated to this forum. *Piper*, 454 U.S at 259-61. Private interest factors include: the residence of the parties and the witnesses; the forum's convenience to the litigants; access to physical evidence and other sources of proof; whether unwilling witnesses can be compelled to testify; the cost of bringing witnesses to trial; the enforceability of the judgment; and "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947). Here, because the balance of public and private interest factors establish that "trial in the chosen forum would be unnecessarily burdensome for the defendant [and] the court," this case should be dismissed. *See Lockman Found.*, 930 F.2d at 767.

### a. Public Factors

**Local interest.** Because this action asserts claims against *German* Defendants for securities violations allegedly committed in *Germany* based on disclosure documents prepared pursuant to *German* law, Germany clearly has a much stronger "local interest" in this case than the United States. *See, e.g.*, *STM Grp., Inc. v. Gilat Satellite Networks Ltd.*, 2011 WL 2940992, at *9 (C.D. Cal. July 18, 2011) (finding that Peru had a stronger local interest than California where alleged misconduct took place in Peru). In fact, German law states that Germany has exclusive jurisdiction over claims against German corporations alleging manipulation of the capital markets. Wagner Decl. ¶¶ 47-55. Accordingly, Germany would not enforce any judgment in this action if it were to proceed in this Court. *Id.* ¶¶ 6, 12, 39-46. Germany's interest is further demonstrated by its robust statutory and regulatory regime to combat securities fraud like that alleged by Plaintiff. Wagner Decl. ¶¶ 47-51. Because the Wirecard filings challenged in this case (FAC ¶¶ 128-39) were prepared pursuant to the German securities laws (Stoeckl Decl. ¶¶ 7, 9, 16), Germany, not the U.S., has a stronger interest in hearing Plaintiff's claims. Wagner Decl. ¶¶ 52-55.

**Familiarity with law.** A German court likely would apply German law to Plaintiff's claims. Wagner Decl. ¶¶ 13-16. Since a German court obviously is familiar

with its own law, this factor clearly weighs in favor of a German forum.  But even if a German court decides that U.S. law should apply, that would not alter the analysis because "[c]ourts ... often have to apply the law of a different jurisdiction and there is no reason to believe a German court would be unable to" apply the U.S. securities laws.  *See Oto v. Airline Training Ctr. Arizona, Inc*., 247 F. Supp. 3d 1098, 1109 (D. Ariz. 2017) (German court could apply Arizona tort law).

**Burden on Court and minimal ties to U.S.**  As this Court recognized early in this case, Plaintiff's claims have essentially no nexus to the U.S. because this action is about *German* defendants who allegedly made misleading statements in *Germany* due to alleged accounting improprieties in *Singapore*.  Dkt. 9; ¶¶ 90-94.  Defendants lack even "minimum contacts" with the U.S. because Wirecard only lists its securities on stock exchanges in Germany, and had no role in establishing a U.S. trading presence for the securities held by Plaintiff.  *Infra* at 10-13.  There is no justification for litigating this action here, especially given that "the Central District of California [] is one of the busiest districts in the country."  *In re Air Crash Over Taiwan Straits on May 25, 2002*, 331 F. Supp. 2d 1176, 1202 (C.D. Cal. 2004).  Because "a trial may be speedier in another court due to a less crowded docket," *Velasco v. Americanos USA, LLC*, 2014 WL 266803, at *13 (C.D. Cal. Jan. 10, 2014), and Plaintiff's quintessentially foreign lawsuit would "impede the ability of [other] local litigants to try their cases in this district," *Van Schijndel v. Boeing Co*., 434 F. Supp. 2d 766, 782 (C.D. Cal. 2006), this action should be dismissed.

### b.     Private Factors

**Location of parties, witnesses, and evidence.**  The foreign nature of this case overwhelmingly favors dismissal.  All of the Defendants reside in Germany or Austria, and given that all of the alleged events occurred outside of the U.S., the witnesses and evidence will be located overwhelmingly, and perhaps entirely, outside of the U.S. too.  This warrants dismissal.  *See Estate of Thomson v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 366-67 (6th Cir. 2008) (dismissal warranted where evidence was located

in South Africa).  This is not just a matter of convenience.  If the case proceeded to trial in Germany, there also would likely be a more developed factual record because Germany could compel the attendance of German-based witnesses that this Court could not.  Wagner Decl. ¶ 34.  This too favors dismissal.  *See Kleiner v. Spinal Kinetics, Inc.*, 2016 WL 1565544, *4 (N.D. Cal. Apr. 19, 2016).

**Costs**.  For the same reasons, it also would be less costly to try this case in Germany.  Given that the witnesses and evidence largely are based in Germany, it would be far less expensive to litigate this action there than here.  *See* Wagner Decl. ¶ 38.  Additionally, because most, if not all, of the "documentary evidence is in the [German] language, as would be trial or deposition testimony, requiring translation to English [ ] would result in significant cost to the parties and delay to the court." *Blanco v. Banco Indus. de Venez., S.A.*, 997 F.2d 974, 982-83 (2d Cir. 1993) (the need for translation "militates strongly in favor" of the foreign forum); *see also Leetsch v. Freedman*, 260 F.3d 1100, 1105 (9th Cir. 2001) (dismissing in favor of German forum).

Taken together, the relevant factors unquestionably favor Germany as the appropriate forum for Plaintiff's claims.  This action should be dismissed.

**B.    The Defendants Are Not Subject To Personal Jurisdiction In This Court.**

This case also should be dismissed because Defendants, all residents of Germany or Austria, are not subject to jurisdiction in this Court.  Because the Exchange Act authorizes nationwide service of process, Plaintiff must establish that Defendants have "minimum contacts" with the United States as a whole before the Court may exercise jurisdiction over Defendants.  *See Bourassa v. Desrochers*, 938 F.2d 1056, 1057 (9th Cir. 1991).  Plaintiff bears the burden of proving that the exercise of personal jurisdiction over *each* defendant is consistent with the Due Process Clause of the Constitution.  *Ziegler v. Indian River County*, 64 F.3d 470, 473-74 (9th Cir. 1995).  Because Plaintiff does not and cannot allege facts to carry his burden of

establishing general or specific personal jurisdiction over Wirecard or the Individual Defendants, this action should be dismissed with prejudice.

### 1.    Defendants Are Not Subject to General Jurisdiction.

Wirecard is incorporated under the laws of Germany and maintains its "*Sitz*," or effective place of business, in Aschheim, Germany, and its securities are listed exclusively on German securities exchanges.  Stoeckl Decl. ¶¶ 2, 7.  Likewise, each of the Individual Defendants is a German or Austrian citizen who lives and works in Germany.  *Id.* ¶ 3.  Because Wirecard and the Individual Defendants are "at home" in Germany—not the United States—they are not subject to general jurisdiction in the United States.  *Bauman*, 571 U.S. at 137-39.

The fact that Wirecard has a U.S.-based subsidiary, Wirecard North America, does not change this conclusion.  ¶¶ 18, 19.[5]  The Supreme Court rejected this theory in *Bauman*, holding that even if a subsidiary is "at home" in the forum, and even assuming that the subsidiary's "contacts are imputable" to the foreign parent, that does not subject the foreign parent to general jurisdiction.  571 U.S. at 136.  The only way that a subsidiary's contacts can be imputed to a foreign parent is if the subsidiary is the parent's "alter ego," which requires a stringent showing that the corporate form should be disregarded because of the parent's "pervasive control" of the subsidiary.  *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1071, 1073 (9th Cir. 2015).  Plaintiff does not and cannot allege that Wirecard North America is Wirecard's alter ego because Wirecard does not run its day-to-day operations, and Wirecard North America "leases its own facilities, maintains its own accounting books and records, enters into contracts on its own and pays its own taxes."  Stoeckl Decl. ¶ 19; *see Ranza*, 793 F.3d at 1074.  There is thus no basis to find general jurisdiction over any of the Defendants.

### 2.    Defendants Are Not Subject to Specific Jurisdiction.

The Defendants also are not subject to specific jurisdiction because they had no

---

[5]  Citi Prepaid Card Services, referenced in the FAC, is part of Wirecard North America's business.  Stoeckl Decl. ¶ 17.

involvement in creating the U.S. market for the securities held by Plaintiff.  Three requirements must be met to establish specific jurisdiction.  First, "[t]he non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident" or "perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws."  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).  Second, "the claim must be one which arises out of or relates to the defendant's forum-related activities."  *Id.*  Third, "the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable."  *Id.*  None of these requirements is met here.

>    **a.**     **The Defendants have not availed themselves of or directed their activities to the U.S. with respect to the securities at issue.**

In securities cases, a defendant purposefully avails itself of the U.S. forum by "taking advantage of this nation's laws and its capital markets."  *S.E.C. v. Jammin Java Corp.*, 2016 WL 6595133, at *8 (C.D. Cal. July 18, 2016).  This test is not satisfied merely because a foreign company's securities trade in the U.S., which is all that Plaintiff alleges here.  ¶¶ 7, 36-37.  For example, in *Sears, Roebuck & Co. v. Sears plc*, the court refused to exercise specific jurisdiction over a foreign company that "authorized" issuance of unsponsored ADRs because it "neither promote[d] the trading of the ADRs in this country, nor ma[de] the necessary filings with the SEC," and thus "[t]he entire program, except for the foreign issuer's supplying basic financial information, [wa]s administered by the United States depositary"—*i.e.*, the defendant had not "done any act" in the forum "with relation to the sale of ADRs."  744 F. Supp. 1297, 1300, 1302 (D. Del. 1990).

The same is even more true here.  Unlike the defendant in *Sears*, Defendants did not "authorize" the issuance or trading of Wirecard unsponsored ADRs or F-shares in the U.S.  Stoeckl Decl. ¶¶ 11-14.  The unsponsored ADR programs were established by depositary banks without Defendants' consent.  *Id.* ¶ 13.  Defendants simply had no

MPA ISO DEFENDANTS' MOTION TO DISMISS
CASE NO. 2:19-cv-00986-FMO-SK

Gibson, Dunn & Crutcher LLP

1  involvement in establishing the ADR programs or facilitating the trading of ADRs in

2  the U.S.  *Id.* ¶¶ 11-12.  Likewise, Defendants had no involvement in creating or

3  facilitating a trading presence for Wirecard F-shares in the U.S., and it was established

4  without Defendants' consent.  *Id.* ¶ 14.  Additionally, Defendants have never solicited

5  *any* purchases of unsponsored ADRs or F-Shares (let alone from Plaintiff).  *Id.* ¶ 15.

6  Plaintiff therefore cannot establish that Defendants purposefully availed themselves of

7  the U.S. securities market with respect to the securities held by Plaintiff.

8      For the same reasons, Plaintiff cannot demonstrate that Defendants

9  "purposefully directed [their] conduct" at the U.S.  *Schwarzenegger*, 374 F.3d at 803.

10  This requires showing that a defendant "(1) committed an intentional act, (2) *expressly*

11  *aimed* at the forum state, (3) causing harm that the defendant *knows is likely to be*

12  *suffered in the forum state*."  *Id.*  Plaintiff suggests in his complaint that this test is met

13  merely because Wirecard issued common stock in Germany, and shares ended up on

14  the U.S. OTC market.  *See, e.g.*, ¶¶ 46, 52.  This theory flies in the face of the black

15  letter law that "[t]he placement of a product into the stream of commerce, without

16  more, is not an act purposefully directed toward a forum state."  *Holland Am. Line Inc.*

17  *v. Wartsila N. Am., Inc.*, 485 F.3d 450, 459 (9th Cir. 2007).  Moreover, "[e]ven a

18  defendant's awareness that the stream of commerce may or will sweep the product into

19  the forum state does not convert the mere act of placing the product into the stream of

20  commerce into an act purposefully directed toward the forum state."  *Id.*  Thus,

21  Wirecard's issuance of its stock on German stock exchanges cannot form the basis for

22  specific jurisdiction.

23      Similarly, Plaintiff's allegation that Wirecard "published its quarterly and annual

24  results in English" does not confer personal jurisdiction over Wirecard.  ¶ 66(a); *see*

25  ¶ 7.  Plaintiff argues this constitutes "purposeful direction" because the depositary

26  banks could not have established the ADR programs unless Wirecard published its

27  results in English pursuant to SEC Rule 12g3-2(b).  ¶¶ 7, 16-17, 47, 66(a).  But

28  Wirecard published its results in English because it is *required* to do so under

1  Frankfurt Stock Exchange rules, *not* to comply with any U.S. securities law or

2  regulation.  Stoeckl Decl. ¶ 16.  In any event, as the Ninth Circuit made clear in

3  affirming dismissal of a securities case involving unsponsored ADRs, "there are many

4  plausible reasons for a company to provide English materials, precluding the inference

5  that [the foreign company's] actions were to support unsponsored ADRs."  *See*

6  *Toshiba*, 896 F.3d at 952 n.24 (affirming 12(b)(6) dismissal).

7      This action must be dismissed because Plaintiff has failed to carry his burden of

8  establishing that Wirecard purposefully availed itself of, or directed its activities at, the

9  United States.  For the same reasons, there is no jurisdiction over the Individual

10  Defendants because Plaintiff only alleges that there is jurisdiction over them by virtue

11  of their alleged control of Wirecard.  ¶ 7; *see San Mateo County Transit Dist. v.*

12  *Dearman, Fitzgerald and Roberts, Inc.*, 979 F.2d 1356, 1358 (9th Cir. 1992) (personal

13  jurisdiction exists over those who control a primary violator of securities laws).

14          **b.      Plaintiff's claims do not "arise out of" or "relate to" any other**

15                   **contact the Defendants had with the U.S.**

16      This case also must be dismissed because Plaintiff's claims do not relate to

17  Defendants' alleged contacts with the U.S.  The Ninth Circuit employs a "but for" test

18  to determine whether a claim arises out of a nonresident defendant's activities in the

19  forum.  *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995).  Accordingly, Plaintiff

20  must prove that he would not have suffered a loss "but for" Wirecard's contact with

21  the U.S.  *Id.*  The only "contact" with the U.S. alleged by Plaintiff is the presence of

22  Wirecard's subsidiary, Wirecard North America.  ¶¶ 18-19.  But Wirecard North

23  America has nothing to do with the securities at issue in this case, or even Wirecard's

24  capital markets activities generally.  Stoeckl Decl. ¶ 20.  Plaintiff has not met his

25  burden under prong two of the *Schwarzenegger* test.

26          **c.      It would be unreasonable to exercise personal jurisdiction.**

27      Finally, even assuming that the Defendants had "minimum contacts" with the

28  U.S. (they do not), this action should still be dismissed because it would be

1    unreasonable to subject Defendants to jurisdiction.  *Asahi Metal Indus. Co. v. Super.*

2    *Ct.*, 480 U.S. 102, 113-14 (1987).  In determining whether exercising personal

3    jurisdiction is reasonable, courts consider numerous factors, including "the extent of

4    the defendants' purposeful interjection into the forum state's affairs" as well as several

5    factors that overlap with the *forum non conveniens* factors discussed above.  *See Core-*

6    *Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1487-88 (9th Cir. 1993).  Even if there

7    were sufficient "interjection" to satisfy the purposeful availment prong for specific

8    jurisdiction, the Court must still weigh the "degree of interjection" separately in

9    assessing the "overall reasonableness of jurisdiction."  *Ins. Co. of N. Am. v. Marina*

10   *Salina Cruz*, 649 F.2d 1266, 1271 (9th Cir. 1981).  Additionally, when a case involves

11   foreign defendants, "[t]he unique burdens placed upon one who must defend oneself in

12   a foreign legal system should have significant weight."  *Asahi*, 480 U.S. at 114.

13          Under these standards, it would be unfair to haul the German Defendants into

14   this Court.  Defendants did not "interject" themselves into the U.S. with respect to

15   Plaintiff's claims.  The only thing Wirecard did was list its stock in Germany.  *Supra* at

16   10-13.  Third parties then took Wirecard stock and created a new trading presence in

17   the U.S. OTC market.  *Id.*  Even if this were sufficient to establish minimum

18   contacts—which it is not—it would be unreasonable to subject Defendants to

19   jurisdiction when they had no role in establishing or facilitating the U.S. market for the

20   securities held by Plaintiff.  *Id.*  And, for the reasons discussed in the *forum non*

21   *conveniens* section of this Motion, the remaining factors also show that subjecting

22   Defendants to jurisdiction would be unreasonable.  *Supra* at 5-9.

23          Because Plaintiff has failed to meet any of the requirements for establishing

24   personal jurisdiction—a pleading failure that cannot be cured—this action should be

25   dismissed with prejudice.

26   **C.    Plaintiff Fails To State A Claim.**

27          Even if this case were properly before this Court, the FAC must be dismissed for

28   the additional reason that Plaintiff fails to plead securities fraud under the applicable

Gibson, Dunn &
Crutcher LLP

14

**MPA ISO DEFENDANTS' MOTION TO DISMISS**
**CASE NO. 2:19-cv-00986-FMO-SK**

heightened pleading standards.  To state a Section 10(b) claim, a complaint must allege (1) a material misrepresentation or omission; (2) made with scienter; (3) in connection with the purchase or sale of a security; (4) on which plaintiff relied; (5) economic loss; and (6) loss causation.  *Oregon Pub. Employees Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 603 (9th Cir. 2014).  A plaintiff must plead "all elements of a securities fraud action" with particularity pursuant to Federal Rule of Civil Procedure 9(b) and the PSLRA.  *Id.* at 604-05.  The FAC falls short of these stringent requirements.

### 1.    Plaintiff Cannot Assert Claims Based On German Securities.

Plaintiff is barred from bringing claims "in connection with transactions in … Wirecard common stock sold [on] … stock exchanges in Germany." ¶ 1.  In *Morrison v. National Australia Bank*, the Supreme Court held that only (1) "the purchase or sale of a security listed on an American stock exchange," and (2) "the purchase or sale of any other security in the United States" (*i.e.*, "domestic" transactions) are regulated by the Exchange Act because it does not apply extraterritorially.  561 U.S. 247, 273 (2010).  Despite this ruling, Plaintiff claims this action seeks damages for transactions in Wirecard's common stock (WDI) made on German stock exchanges.  ¶¶ 1, 174 (alleging Plaintiff represents all U.S. investors "who purchased shares of Wirecard common stock").  This is not permitted under *Morrison*.  Plaintiff *only* may assert claims based on *domestic* transactions in unsponsored ADRs (WCAGY) and F-shares (WRCDF) on the U.S. OTC market.  ¶ 1.

### 2.    Plaintiff Fails To Plead The "In Connection With" Requirement.

Because Wirecard had no involvement in establishing a trading presence in the securities purchased by Plaintiff, this action should be dismissed for failure to plead facts demonstrating that the alleged misrepresentations were made "in connection with" the purchase or sale of securities.  The Ninth Circuit recently affirmed dismissal of securities fraud claims on this basis in an action involving unsponsored ADRs like those at issue here.  *Toshiba*, 896 F.3d at 951-52.  In that case, plaintiff brought suit on behalf of a putative class of purchasers of unsponsored ADRs on the U.S. OTC market

1   against Toshiba, whose stock only publicly traded in Japan.  *Id.* at 939-40.  Although

2   the Ninth Circuit held that *Morrison* did not bar plaintiffs' claims because transactions

3   on the U.S. OTC market are "domestic," *id.*, it held that "*Morrison*'s animating comity

4   concerns" warranted dismissal for failure to plead the "in connection with" element of

5   a Section 10(b) claim, *id.* at 950-52.  This element requires establishing that the alleged

6   fraud was "done to induce the purchase at issue"—*i.e.*, the specific "securities

7   transaction in question."  *Id.* at 951.  The Ninth Circuit held that plaintiffs failed to

8   plead this element because they did not allege whether Toshiba gave its "consent" to

9   "establishing an unsponsored ADR facility" or otherwise took "actions [] to support

10  unsponsored ADRs."  *Id.* at 951-52 & n.24.

11      The same is true here.  Plaintiff fails to plead that Wirecard consented to

12  creation and trading of unsponsored ADRs and F-shares in the U.S.  To the contrary,

13  he only alleges that Wirecard decided to list its stock *exclusively* on stock exchanges in

14  Germany, which is *inconsistent* with Wirecard consenting to its stock trading in the

15  U.S.  ¶ 35.  Under *Toshiba*, Plaintiff cannot assert securities fraud claims against

16  Wirecard merely because broker-dealers decided to make a secondary market in

17  Wirecard's F-shares without *any* alleged involvement by Wirecard.  ¶ 36.

18      Moreover, and contrary to Plaintiff's bald assertion that "[u]nsponsored ADSs

19  are not sold without the express or implied consent of the foreign issuer," ¶ 48, both

20  the Ninth Circuit and the SEC make clear that an unsponsored ADR program can be

21  established "without [the issuer's] acquiescence."  *Toshiba*, 896 F.3d at 941; *see* FAC

22  Ex. 5 at 2 ("An unsponsored ADR is set up *without the cooperation* of the non-U.S.

23  company").  Plaintiff attempts to plead Wirecard's consent based solely on what is

24  "ordinarily" done in the industry, alleging "[i]t is a *regular* practice and custom" for

25  depositary banks to request consent from a foreign issuer before establishing an

26  unsponsored ADR program, and banks "*ordinarily* will not proceed" to do so if the

27  "foreign issuer refuses to consent or otherwise objects."  ¶ 59; *see also* ¶¶ 60-62.

28  Completely absent from the FAC are particularized allegations that the banks *in this*

*case* asked for and obtained Wirecard's consent.  Plaintiff "offers only speculation" that Wirecard provided consent, which fails to plead the "in connection with" element with particularity.  *See DeHoog v. Anheuser-Busch InBev SA/NV*, 899 F.3d 758, 765 (9th Cir. 2018) (dismissing claim under Rule 8 because "speculation 'stops short of the line between possibility and plausibility of entitlement to relief.'").

Plaintiff's remaining allegations are even more deficient.  ¶ 66.  Consent cannot be inferred merely because "Wirecard published its quarterly and annual results in English."  *Id.*; *see Toshiba*, 896 F.3d at 952 n.24.  And Plaintiff's conclusory allegations that "[i]t is unlikely that the Depositary Banks … could have obtained a sufficient number of WDI shares" without Wirecard's consent, and that the banks had "substantial holdings in Wirecard" also should be rejected.  ¶ 66.  Plaintiff fails to allege how many Wirecard shares the banks own, or why it is "unlikely" the banks were unable to acquire this amount on the open market without any involvement by Wirecard.  The FAC thus must be dismissed for failure to plead that Wirecard consented to the establishment of a trading presence in unsponsored ADRs and F-shares in the U.S.

### 3.    Plaintiff Fails To Plead A Strong Inference Of Scienter.

The FAC also must be dismissed because it does not contain a single non-conclusory allegation of scienter.  Under the PSLRA, Plaintiff must allege "with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind" regarding "each act or omission alleged."  15 U.S.C. § 78u-4(b)(2)(A).  This requires pleading that "the defendants made false or misleading statements either intentionally or with deliberate recklessness."  *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009).  A strong inference of scienter means that "the inference of scienter [is] cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007).  "In reviewing a complaint under this standard, the court must consider *all* reasonable inferences to be drawn from the

allegations, including inferences unfavorable to the plaintiffs." *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008).  Plaintiff fails to plead that any Individual Defendant acted with scienter under these strict standards, which, as this Court has held, is fatal to their claim against both the Individual Defendants and Wirecard.  *See McGee v. Am. Oriental Bioengineering, Inc.*, 2014 WL 12586107, at *17 n.19 (C.D. Cal. Sept. 23, 2014) (no corporate scienter where plaintiffs "failed to plead scienter with respect to any of the Officer Defendants") (Olguin, J.).[6]

Plaintiff's scienter allegations fail because they "are entirely conclusory."  *In re LeapFrog Enters., Inc. Sec. Litig.*, 527 F. Supp. 2d 1033, 1044 (N.D. Cal. 2007). Plaintiff alleges merely that the supposed falsity of the challenged statements was "known to Defendants or recklessly disregarded by them." ¶ 140; *see also* ¶¶ 26(f), 182, 184-85 (same conclusory allegations).  These bare assertions come nowhere close to meeting the stringent pleading requirements of the PSLRA.  *See McGee*, 2014 WL 12586107 at *14 ("Although the FAC contains voluminous conclusory allegations regarding Defendants['] knowledge or deliberate recklessness, none of the allegations show that they were notified of information that would have led them to believe that any of the challenged statements were false when made.") (quoting *In re Impac Mortg. Holdings, Inc. Sec. Litig.*, 554 F.Supp.2d 1083, 1101 (C.D. Cal. 2008)); *see also Westley v. Oclaro, Inc.*, 897 F. Supp. 2d 902, 928 (N.D. Cal. 2012) (pleading scienter under PSLRA requires "specific facts explaining the basis for the claim that Defendants had such knowledge").  Plaintiff's failure to plead *any* facts evidencing scienter requires dismissal.

---

[6] Plaintiff's allegation that Wirecard's scienter can be established through the scienter of any employee or agent (¶ 28) is at odds with the law of the Ninth Circuit, which has "not … adopted a theory of collective scienter." *Glazer Capital Mgmt., LP v. Magistri*, 549 F.3d 736, 744-45 (9th Cir. 2008); *see also Nordstrom, Inc. v. Chubb & Son, Inc.*, 54 F.3d 1424, 1435 (9th Cir. 1995) ("[T]here is no case law supporting an independent 'collective scienter' theory ….").

Gibson, Dunn &
Crutcher LLP

### 4.   Plaintiff Fails To Plead Falsity.

Plaintiff's failure to plead that any challenged statement was false or misleading also warrants dismissal.  A securities fraud complaint must "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading."  *Metzler*, 540 F.3d at 1061.  Statements are misleading only if they "affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists."  *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002).  Plaintiff challenges three categories of statements in Wirecard's Annual Reports:  (1) statements about protecting customer data; (2) statements about accounting internal controls; and (3) unspecified financial figures.  None of these is actionable.

***Statements about data protection.***   Plaintiff alleges that Wirecard's statements about "counter[ing] internal misuse" of data (¶¶ 129, 132, 135, 138) are misleading because of alleged accounting fraud in its Singapore office.  ¶ 140.  But the challenged statements appear in a paragraph about protecting "customer data" and complying with "data protection laws."  Lutz Exs. 2 at 136–37; 3 at 141–42; 4 at 158; 5 at 104–05.  Because these statements are not about accounting data, they are not rendered misleading by omission of the alleged accounting fraud.  *See Jui-Yang Hong v. Extreme Networks, Inc.*, 2017 WL 1508991, at *15 (N.D. Cal. Apr. 27, 2017) (plaintiff failed to plead falsity where "the reasons Plaintiffs offer as to why the statements are false or misleading bear no connection to the substance of the statements themselves").

***Statements about internal controls***.   Plaintiff next challenges statements that Wirecard "has an internal control and risk management system" that is "*designed* to guarantee…correct accounting" and "ensures compliance with statutory standards, accounting regulations and the internal [Wirecard] accounting directive."  ¶¶ 130, 133, 136, 139.  Plaintiff does not dispute that Wirecard had internal controls in place, that these controls complied with applicable statutes and regulations, or that they were "designed" to make sure Wirecard had "correct accounting."  Instead, he alleges they

MPA ISO DEFENDANTS' MOTION TO DISMISS
CASE NO. 2:19-cv-00986-FMO-SK

Gibson, Dunn &
Crutcher LLP

were misleading by omitting (1) a Wirecard employee in Singapore was "accused" of accounting fraud, (2) Wirecard's internal investigation into that accusation found "evidence" of potential wrongdoing, and (3) Wirecard has "weaknesses in its internal controls." ¶ 140.  These allegations fail.

First, the law is clear that Wirecard did not need to disclose the allegations of wrongdoing in Singapore.  "[C]ompanies are not required to engage in 'self-flagellation' by disclosing unproven allegations" because the "[f]ederal securities laws do not impose upon companies a 'duty to disclose uncharged, unadjudicated wrongdoing.'"  *In re Facebook, Inc. Sec. Litig.*, 405 F. Supp. 3d 809, 836 (N.D. Cal. 2019) (citing multiple cases).  Because Plaintiff admits that "no conclusions" have been reached about the alleged wrongdoing, ¶ 93, Plaintiff fails to plead falsity based on the ongoing investigation in Singapore.

Second, Plaintiff fails to plead falsity based on the alleged omission of internal control "weaknesses."  ¶ 140.  This allegation fails at the most basic level because Plaintiff does not even specify the alleged weaknesses.  *See Metzler*, 540 F.3d at 1070 (the PSLRA's "exacting requirements for pleading 'falsity'" require "the pleading of specific facts indicating why those statements were false").  In any event, Plaintiff's theory appears to be that Wirecard's internal controls must have been deficient because they did not detect the alleged accounting problems, but that is not securities fraud.  *See Nathanson v. Polycom, Inc.*, 87 F. Supp. 3d 966, 978 (N.D. Cal. 2015) ("the Court cannot simply assume…internal controls were inadequate simply because Miller managed to steal from Polycom").

***Financial figures.***  Plaintiff's claim that unspecified revenue and other financial figures were false also fails.  ¶ 141.  Plaintiff does not even identify the allegedly false financial figures, which alone requires dismissal.  15 U.S.C. § 78u-4(b)(1) ("the complaint shall specify each statement alleged to have been misleading").  Plaintiff also does not explain why these figures are misleading, merely cross-referencing 28 paragraphs in the FAC.  ¶ 141.  This "puzzle pleading" is impermissible.  *See, e.g.*,

1    *New York State Teachers' Ret. Sys. v. Fremont Gen. Corp*, 2009 WL 3112574, at *6

2    (C.D. Cal. Sept. 25, 2009).  In any event, to plead accounting fraud "plaintiff must

3    show with particularity how the adjustments affected the company's financial

4    statements and whether they were material in light of the company's overall financial

5    position." *In re Daou Sys., Inc.*, 411 F.3d 1006, 1018 (9th Cir. 2005).[7]  Plaintiff does

6    not do that, so the FAC should be dismissed.

7    **5.    Plaintiff Fails To Plead Economic Loss For His F-Shares.**

8    Plaintiff cannot pursue claims in connection with Wirecard F-Shares (WRCDF)

9    because he suffered no economic loss.  According to Plaintiff's PSLRA Certification,

10   which he expressly "incorporated by reference" in the FAC, ¶ 10, Plaintiff purchased

11   his shares of WRCDF for $90.17 and $96.  Dkt. 18-2 at 2.  He then sold all of his

12   holdings in 2018—except for a single share—*before* the first alleged corrective

13   disclosure in January 2019.  *Compare id.*, *with* ¶¶ 142-43.  Thus, the only loss he could

14   have hypothetically suffered is in connection with the single share that he continued to

15   hold.  But Plaintiff did not suffer *any* loss because, even after all of the alleged

16   corrective disclosures in this case, ¶¶ 142-51, the price of WRCDF has *never fallen*

17   *below* either of the prices at which he purchased WRCDF.  Lutz Ex. 6.  These

18   judicially noticeable facts bar Plaintiff from recovering damages under the PSLRA

19   because "if the mean trading price of a security during the 90–day period following the

20   correction is *greater* than the price at which the plaintiff purchased his stock then that

21   plaintiff would recover nothing under the PSLRA's limitation on damages." *In re*

22   *Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 461 (9th Cir. 2000) (citing 15 U.S.C.

23

24

25

26   [7]  As documents incorporated by reference in the FAC show, Plaintiff cannot plead that that the "adjustments" were "material." *Id.*  Plaintiff references Wirecard's March 26, 2019 summary of findings, ¶ 100, which states that €2.5 million "was

27   wrongfully recorded" in 2017, but, because of other "positive restatements," 2017 revenues ultimately were overstated by €1.5 million.  Lutz Exs. 1; 5 at 163.  This is immaterial, amounting to just 0.1% of Wirecard's €1,488.6 million revenues in

28   2017.  *Id.* at 2 ("Key figures" table).

21

Gibson, Dunn & Crutcher LLP

§ 78u–4(e)).  Plaintiff's claims based on WRCDF must be dismissed because he does not and cannot plead economic loss.

## IV.   CONCLUSION

For the foregoing reasons, Defendants request that the Court dismiss this action with prejudice on *forum non conveniens* grounds, for lack of personal jurisdiction, and for failure to state a claim.

Dated:  March 13, 2020

GIBSON, DUNN & CRUTCHER LLP

By: /s/ *Brian M. Lutz*

Brian M. Lutz
Michael J. Kahn
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone: 415.393.8200
Facsimile: 415.393.8306
blutz@gibsondunn.com
mjkahn@gibsondunn.com

*Attorneys for Defendants*