BRIAN M. LUTZ, SBN 255976
  blutz@gibsondunn.com
MICHAEL J. KAHN, SBN 303289
  mjkahn@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone:  415.393.8200
Facsimile:   415.393.8306

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK DALPOGGETTO, Individually and On Behalf of All Others Similarly Situated,<br><br>          Plaintiff,<br><br>     v.<br><br>WIRECARD AG, MARKUS BRAUN, BURKHARD LEY, ALEXANDER VON KNOOP, JAN MARSALEK, and SUSANNE STEIDL,<br><br>          Defendants. | CASE NO. 2:19-cv-00986-FMO-SK<br><br>**DECLARATION OF GERHARD WAGNER IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAW**<br><br>**Hearing:**<br>Date:        May 7, 2020<br>Time:        10:00 a.m.<br>Place:       Courtroom 6D<br>Judge:       Hon. Fernando M. Olguin<br><br>Action Filed:        February 8, 2019 |

Gibson, Dunn &
Crutcher LLP

DECLARATION OF GERHARD WAGNER ISO MOTION TO DISMISS
CASE NO. 2:19-cv-00986-FMO-SK

## I. Qualifications

1. My name is Gerhard Wagner. I received my legal education in Germany and in the United States. I earned a PhD in law (Dr. jur.) from the University of Göttingen, Germany. I finished my legal studies at the University of Chicago Law School with an LL.M. degree in 1995. From 1999 – 2013, I was a tenured professor in German and European Private Law and Civil Procedure, Conflict of Laws and Comparative Law at the Law and Economics faculty of the University of Bonn and executive director of the Institute of German and International Civil Procedure and Conflicts Management. Since 2013, I serve as professor of Private Law, Commercial Law and Economic Analysis of Law at Humboldt-University in Berlin, Germany. I am the founder and academic director of Humboldt's English-language LL.M. program in "International Dispute Resolution". In the academic year 2010/2011, I served as visiting professor at the University of Chicago Law School, and in 2018, I was visiting scholar at New York University School of Law.

2. My research is concentrated within the two fields of tort law and dispute resolution, including international litigation. I am the co-author of a popular treatise on the German law of torts, and the sole author of the leading commentary on the tort law provisions of the German Civil Code. In addition, I have written extensively on the European Regulation on Jurisdiction and Enforcement of Judgments in the leading commentary on the German Code of Civil Procedure. The editors of the Oxford Handbook on Comparative Law selected me to author the tort law section in their treatise. I have advised the German law reform commission (Deutscher Juristentag) on the issues of punitive damages and class litigation and published widely on the problems of liability for pure economic loss in general, and within the area of capital markets in particular. I am co-editor of the two leading German-language journals on German and European private law, i.e., the Archiv für die civilistische Praxis (AcP) and the Zeitschrift für Europäsches Privatrecht (ZEuP). I attach my resumé and a list of publications as Exhibit 1.

DECLARATION OF GERHARD WAGNER ISO MOTION TO DISMISS
CASE NO. 2:19-cv-00986-FMO-SK

## II. Summary of Conclusions

3. Assuming the truth of the facts alleged in the Complaint, the German courts are competent to hear and decide the case. In doing so, the German courts would apply German substantive law to the dispute. The substantive law of Germany governing liability for manipulating capital markets provides Plaintiff with a cause of action. Plaintiff also would be entitled to compensation for all losses incurred, provided that liability can be established.

4. Germany's civil practice shares the same central values and goals as U.S. practice, i.e., the enforcement of valid claims by means of granting open access to courts and by establishing the true facts underlying the dispute in question. While the German system of fact gathering differs from the American system of pre-trial discovery, the German system nonetheless provides Plaintiff with a full and fair opportunity to develop his case.

5. Germany has a strong interest in having the claims that form the subject matter of the present lawsuit adjudicated in Germany. The rules on liability for market manipulation and misinformation of capital markets are part of the regulatory framework of the German capital markets, as well as the European capital markets. The German government, together with the European Union ("EU"), strongly favor the application of its law to questions concerning the potential liability of German public corporations. The same policy applies with regard to the procedural questions of international jurisdiction and venue.

6. As evidence of such strong interest, German law stipulates that with regard to lawsuits brought against German corporations for damages caused by misinformation of capital markets, exclusive jurisdiction is vested in the court at the seat of the public company. Since the Complaint is based on an alleged manipulation of the market price of shares issued by Wirecard Aktiengesellschaft ("Wirecard") and Wirecard has its seat in Germany, a German court has exclusive jurisdiction. This rule of exclusive jurisdiction also covers the lawsuits brought against the Individual

DECLARATION OF GERHARD WAGNER ISO MOTION TO DISMISS
CASE NO. 2:19-cv-00986-FMO-SK

Gibson, Dunn & Crutcher LLP

Defendants. As a consequence, a judgment rendered by a U.S. court against the Defendants would not be enforceable in Germany.

## III. Discussion

### A. The Defendants are Subject to Lawsuits in Germany

7. The German courts are competent to hear and decide the claims raised by the Plaintiff. If the Plaintiff were to file a lawsuit in Germany raising similar claims, the Defendants would be subject to service of process there.

8. Pursuant to the regulations of the EU[1] and the case law of the European Court of Justice ("ECJ")[2], any defendant that is domiciled within the EU is subject to the jurisdiction of the courts at the place of his, her, or its domicile.[3]

9. Wirecard is organized as a German Stock Company (Aktiengesellschaft – "AG"). EU regulations provide that the domicile of corporate entities is in "the place where it has its: (a) statutory seat, or (b) central administration, or (c) principal place of business".[4] The statutory seat of Wirecard is Aschheim, a municipality in the district of Munich, Germany, and this is also where its central administration and principal

---

[1] Article 4 Regulation (EU) No 1215/2012 of the European Parliament and of the Council of 12 December 2012 on jurisdiction and the recognition and enforcement of judgments in civil and commercial matters ("Brussels Ia Regulation").

[2] In its seminal decision in the Group Josi case, the ECJ held that the Brussels I regime: "is in principle applicable where the defendant has its domicile or seat in a Contracting State, even if the plaintiff is domiciled in a non-member country." EuGH, 13.7.2000, C-412/98 (Group Josi Reinsurance Company SA ./. Universal General Insurance Company), [2000] ECR, I-5925, at 5963 para 61.

[3] Where the defendant is domiciled in a EU Member State and the competing jurisdiction of the court of a Non-EU state is in issue, Brussels I takes priority over that EU member state's rules on jurisdiction. ECJ, 13.7.2000, C-412/98 (Group Josi Reinsurance Company SA ./. Universal General Insurance Company), [2000] ECR, I-5925, at 5955 para 47; ECJ 01.03.2005, C-281/02 (Owusu ./. Jackson), [2005] ECR, I- 1383 at 34; *Wagner*, in: Stein/Jonas, Zivilprozessordnung, 22nd Ed. 2011, Art. 2 EuGVVO para. 3.

[4] Article 63 Brussels Ia Regulation.

Gibson, Dunn & Crutcher LLP

4

DECLARATION OF GERHARD WAGNER ISO MOTION TO DISMISS
CASE NO. 2:19-cv-00986-FMO-SK

place of business are located.[5] Therefore, Wirecard is subject to the jurisdiction of the German courts.

10. With respect to the Individual Defendants, the applicable EU regulation authorizes the court to apply its own law in determining whether a party is domiciled in the respective Member State.[6] Under the applicable German rule, the domicile of a natural person is at the place of his or her habitual residence.[7] I understand that all of the Individual Defendants are domiciled in Germany. Even if one of them was domiciled in another EU Member State, he or she may be sued together with the other "anchor" Defendants in Germany since the corporate and the individual claims are based on essentially the same set of facts and on related legal allegations.[8]

11. The applicable EU regulation leaves the issue of venue within a particular Member State to the law of the Member State in question. Accordingly, venue in this case would be  governed by German law. As explained below, pursuant to Section 32b of the German Code of Civil Procedure (Zivilprozessordnung – "ZPO"), the Defendants must be sued in a single forum at the  seat of Wirecard in Munich, Germany.[9]

## B.    Availability and Adequacy of Remedies in Germany

12. A conflict of laws analysis indicates that German law is applicable to the dispute. German law provides Plaintiff with a cause of action to bring claims similar to those raised in the Complaints and sets forth a system of damages that would entitle him to

---

[5] https://www.wirecard.com/de/impressum

[6] Article 62 Brussels Ia Regulation.

[7] Section 7 of the German Civil Code.

[8] Section 8 No1 Brussels Ia Regulation provides: "A person domiciled in a Member State may also be sued: (1) where he is one of a number of defendants, in the courts for the place where any one of them is domiciled, provided the claims are so closely connected that it is expedient to hear and determine them together to avoid the risk of irreconcilable judgments resulting from separate proceedings". C.f. *Wagner* in: Stein/Jonas, Zivilprozessordnung, 22nd Ed. 2011, Art. 6 EuGVVO paras 8, 11 ff. For the related legal basis of the claim, see below, Section B.2.a.

[9] https://www.justiz.bayern.de/media/images/behoerden-und-gerichte/bezirk.pdf

DECLARATION OF GERHARD WAGNER ISO MOTION TO DISMISS
CASE NO. 2:19-cv-00986-FMO-SK

Gibson, Dunn & Crutcher LLP

full compensation for his financial losses, assuming that the facts and the evidence supports his claims. German civil practice also offers an adequate procedural framework for Plaintiff to pursue his claims. Moreover, German courts would not enforce a judgment rendered against the Defendants by a court in the United States.

## 1. Conflict of Laws

13. The substantive law applicable to the dispute is determined by Regulation (EC) No 864/2007 of the European Parliament and the Council of 11 July 2007 on the law applicable to non-contractual obligations ("Rome II Regulation"). The general rule in Article 4 (1) Rome II Regulation stipulates that the law applicable to a non-contractual obligation arising out of a tort/delict shall be the law of the country in which the damage occurs. Some authors suggest that in the realm of securities law the relevant damage occurs "on the market" where the security is traded.[10] However, the prevailing view in Germany is that Article 4 (1) Rome II Regulation *does not* apply to disputes such as this one, that concern the misinformation of capital markets. Instead, according to Article 4 (3) Rome II Regulation, such disputes shall be governed by the law which has the closest connection to the dispute, i.e. the same legal system that also imposes its regulatory framework, such as duties to disclose.[11]

14. I understand that unsponsored American Depositary Receipts ("ADR") enable U.S. Investors to participate in a foreign capital market without acquiring the relevant securities issued abroad. Conversely, it enables companies that are not listed on U.S. exchanges indirect access to the U.S. capital market without being subject to financial

---

[10] *Einsele* ZEuP 2012, 23, 37 ff; *Bach*, in: Huber, Rome II Regulation Pocket Commentary, 1st Ed. 2011, Art. 4 para 44.

[11] *Hellgardt*, in: Assmann/Schneider/Mülbert, Wertpapierhandelsrecht, 7th Ed. 2019, §§ 97, 98 WpHG para 176; *von Hein*, JZ 2015, 946, 949.

DECLARATION OF GERHARD WAGNER ISO MOTION TO DISMISS
CASE NO. 2:19-cv-00986-FMO-SK

Gibson, Dunn & Crutcher LLP

and other disclosure requirements under U.S. Securities Law.[12] Therefore, Wirecard, having issued its WDI stock on the regulated German capital market alone, was only obligated to comply with the relevant financial and other disclosure requirements imposed by German Securities and Corporate Law. These rules are to a large extent of European origin.[13] As a consequence, German (and European) substantive law has the closest connection to any disputes involving alleged breaches of financial and other disclosure requirements of German public companies that are listed on regulated German exchanges. If the liability for such breaches were subjected to other legal regimes, issuers and investors participating in the German capital markets would run the risk that their behavior was being measured against standards that they were unable to foresee and comply with at the time of the transaction, and that might even contradict the duties they must comply with under German and European law.

15. These considerations are particularly relevant to this case, where a foreign issuer that refrained from entering the U.S. capital markets and thus deliberately avoided the regime of American securities regulation would nonetheless be subjected to liability under U.S. law. On the other end of the transaction, the investors buying unsponsored ADRs referencing Wirecard stock issued and traded in Europe, and F-shares of Wirecard, were well aware that they indirectly invested in shares that were not subject to U.S. securities law. Subjecting foreign issuers whose shares are not listed on exchanges inside the U.S. to liability under American securities law contradicts the distinction between domestic and foreign shares, confuses the scope of U.S. securities law, is unfair to foreign issuers and confers an undeserved windfall on American investors who consciously and knowingly invested in foreign shares or

---

[12] C.f. Complaint, paras 42 ff. and SEC Office of Investor Education and Advocacy, Investor Bulletin: American Depositary Receipts (Aug. 2012) at https://www.sec.gov/investor/alerts/adr-bulletin.pdf

[13] E.g. Article 17 Regulation (EU) No 596/2014 of the European Parliament and of the Council of 16 April 2014 on market abuse ("Market Abuse Regulation"), see below.

DECLARATION OF GERHARD WAGNER ISO MOTION TO DISMISS
CASE NO. 2:19-cv-00986-FMO-SK

Gibson, Dunn & Crutcher LLP

1  derivatives thereof.   These considerations would lead a German court to apply

2  German law to Plaintiff's claims.

3  16. In conclusion, in order to preserve the regulatory function of German and European

4  financial markets law, German law would also govern Wirecard's liability for alleged

5  misinformation of investors.

### 2.   Adequacy of German Substantive Law

### a.   Liability

17. The German law of "delict", which is more or less equivalent to the common law of

torts, is based on the combination of a set of general rules in the German Civil Code

(Bürgerliches Gesetzbuch – "BGB") and specific statutory provisions which define

the elements of liability with regard to particular markets and fact-patterns.

### (i)   Liability for Misinformation of Capital Markets under Sections 97, 98 WpHG

18. Sections 97 and 98 of Germany's Securities Trading Act (Wertpapierhandelsgesetz

– "WpHG")[14] supply a special form of liability where investors were misinformed

by issuers and, in consequence, suffered pure economic loss. These provisions

impose civil liability on infringements of the disclosure requirements enshrined in

Article 17 Market Abuse Regulation. Liability under Sections 97, 98 WpHG is

expressly limited to cases where a corporation misleads the capital market in order

to manipulate the price of its own securities admitted to trading on the regulated

capital market. Hence, a claimant under Sections 97, 98 WpHG must own or have

---

[14] Given that Plaintiff alleges liability of Defendants in the period between April 7, 2016 through October 15, 2019, it should be noted that today's Sections 97, 98 WpHG used to be Sections 37b, 37c WpHG until 03.01.2018. The respective provisions will apply depending on the date of the relevant misinformation. Despite the difference in numbering of the WpHG, however, their relevant requirements and effects have not changed. Cf. *Hellgardt*, in: Assmann/Schneider/Mülbert, Wertpapierhandelsrecht, 7th Ed. 2019, § 97, 98 WpHG para 182.

DECLARATION OF GERHARD WAGNER ISO MOTION TO DISMISS
CASE NO. 2:19-cv-00986-FMO-SK

Gibson, Dunn & Crutcher LLP

owned securities issued by the respondent issuer, and these securities must have been admitted to the German regulated capital market.[15]

19. Plaintiff, however, does not allege that he suffered any loss due to transactions in Wirecard common stock sold under the ticker symbol WDI on the German regulated capital market.  Rather, they allege losses relating to transactions in Wirecard ADR and Wirecard common stock sold as foreign issue shares over-the-counter ("OTC") by depositary banks in the United States.   Since only the depository banks hold Wirecard stock, they would qualify as potential claimants under Sections 97, 98 WpHG.

20. Sections 97, 98 WpHG should be applied to holders of unsponsored Wirecard ADRs by analogy. Holders of these ADRs obtain the benefits if Wirecard stock appreciates, and they must put up with any losses if the stock depreciates. Therefore, holders of Wirecard ADR should be classified as the equitable owners of Wirecard stock. As equitable owners, whose shares are held in trust by the banks that issued the ADR, holders of ADR should be allowed to sue under Sections 97, 98 WpHG. To my knowledge, this issue has not been addressed in German case law or academic writing.  In my opinion, there are strong arguments for a German court to bring in holders of unsponsored ADRs within the scope of the present law.[16]

---

[15] *Hellgardt*, in: Assmann/Schneider/Mülbert, Wertpapierhandelsrecht, 7th Ed. 2019, § 97, 98 WpHG para 64; *Zimmer/Grotheer*, in: Schwark/Zimmer, Kapitalmarktrechts-Kommentar, 4th Ed. 2010, WpHG § 37c para 76; *Meschede*, ZIP 2017, 215.

[16] C.f. *Hellgardt*, in: Assmann/Schneider/Mülbert, Wertpapierhandelsrecht, 7th Ed. 2019, § 97, 98 WpHG paras 57, 66 who posits that Sections 97, 98 WpHG cannot be applied by analogy in any case; but see *Zimmer/Grotheer*, in: Schwark/Zimmer, Kapitalmarktrechts-Kommentar, 4th Ed. 2010, WpHG § 37c para 76 who seek to expand Sections 97, 98 WpHG to derivatives issued by third parties.

DECLARATION OF GERHARD WAGNER ISO MOTION TO DISMISS
CASE NO. 2:19-cv-00986-FMO-SK

Gibson, Dunn & Crutcher LLP

### (ii) Liability for Breach of Statutory Duty under Sections 823 (2) BGB, 400 AktG, 331 HGB

21. Plaintiff alleges that financial statements and Annual Reports of Wirecard signed by the Individual Defendants were materially false and/or misleading. Under Section 331 No. 1 German Commercial Code (Handelsgesetzbuch – "HGB") and Section 400 AktG, which impose criminal liability on certain material false and/or misleading statements, Defendants could be found liable for civil damages.

22. Section 331 HGB as well as Section 400 AktG qualify as protective norms within the meaning of Section 823 (2) BGB so that contraventions of these criminal statutes also trigger civil liability in damages.[17] In contrast to Sections 97, 98 WpHG, liability under these provisions is not expressly limited to holders of Wirecard common stock, trading on German exchanges under the ticker WDI. Rather, this cause of action is also available to creditors or potential investors.[18] Owners of Wirecard common stock certainly qualify as investors in Wirecard and are thus within the protective purview of Sections 823 (2) BGB, 331 No. 1 HGB, 400 AktG. Whether the same conclusion applies to holders of ADR based on Wirecard shares is a question that has not been settled by the courts and that has not been discussed in the literature as of yet. However, in my opinion, holders of ADR should be included in the protective scope of Sections 823 (2) BGB, 400 AktG, 331 HGB, and thus be protected against losses from misleading financial statements in the same way as holders of Wirecard stock, because they are equitable owners of Wirecard stock given that they are bearing the risk of the underlying German security because the prices are correlated.

---

[17] *Schaal*, in: Münchener Kommentar zum AktG, 4th Ed. 2017, § 400 para. 3; *Wagner*, in: Münchener Kommentar zum BGB, 7th ed. 2017, § 826 para 110; *Quedenfeld*, in: Münchener Kommentar zum HGB, 3rd Ed. 2013, § 331 para 2; BGH, 19.7.2004, II ZR 218/03, NJW 2004, 2664; OLG München, 24.5.2006, 15 U 3958/05, ZIP 2006, 1247; LG Bonn, 15. 05.2001, 11 O 181/00, AG 2001, 484.

[18] *Schaal*, in: Münchener Kommentar zum AktG, 4th Ed. 2017, § 400 para. 3; *Raum*, in: Henssler/Strohn, Gesellschaftsrecht, 4th Ed. 2019, AktG § 400 para 1.

DECLARATION OF GERHARD WAGNER ISO MOTION TO DISMISS
CASE NO. 2:19-cv-00986-FMO-SK

Gibson, Dunn & Crutcher LLP

23. In conclusion, the Plaintiff should be entitled to relief under Sections 823 (2) BGB, 400 AktG, 331 HGB against the Defendants, assuming the Plaintiff could establish liability.

### (iii)    Willful Harm to Economic Interests, Section 826 BGB

24. In any context and business segment, where intentional wrongdoing is at issue, the tortfeasor may be liable under Section 826 BGB. Pursuant to this provision, someone who causes harm to another intentionally and "against good morals" is liable in damages, including purely financial harm.[19] The German Federal Supreme Court (Bundesgerichtshof – "BGH") has held repeatedly that capital markets fraud actions may be brought under Section 826 BGB.[20] It therefore operates as a fall back provision for all cases of capital market fraud not covered by the more specific Sections 97, 98 WpHG[21] or the tort of breach of statutory duty under Sections 823 (2) BGB, 400 AktG, 331 HGB discussed above.

25. Pursuant to jurisprudence, the "against good morals" requirement does not impose an additional threshold for claims based on alleged capital markets fraud. Rather, intentionally misleading investors for one's own benefit qualifies as behavior

---

[19] Section 826 BGB provides: "A person who, against good morals, intentionally inflicts damage on another is liable to that other to make good the damages." ("Wer in einer gegen die guten Sitten verstoßenden Weise einem anderen vorsätzlich Schaden zufügt, ist dem anderen zum Ersatz des Schadens verpflichtet.").

[20] BGH, 19.07.2004, II ZR 218/03, BGHZ 160, 134 = NJW 2004, 2664; BGH, 19.07.2001, II ZR 402/02, BGHZ 160, 149 = NJW 2004, 2971; BGH, 19.07.2004, II ZR 217/03, NJW 2004, 2668; BGH, 09.05.2005, II ZR 287/02, NJW 2005, 2450; BGH, 28.11.2005, II ZR 80/04, ZIP 2007, 681; BGH, 28.11.2005, II ZR 246/04, ZIP 2007, 679; BGH, 26.06.2006, II ZR 153/05, ZIP 2007, 326; BGH, 04.06.2007, II ZR 147/05, ZIP 2007, 1560; BGH, 07.01.2008, II ZR 229/05, BGH, 04.06.2007, II ZR 173/05, ZIP 2007, 1564; ZIP 2008, 407; BGH, 07.01.2008, II ZR 68/06, ZIP 2008, 410; BGH, 03.03.2008, II ZR 310/06, ZIP 2008, 829; for a comprehensive treatment cf. *Wagner*, in: Münchener Kommentar zum BGB, 7th ed. 2017, § 826 para. 112.

[21] E.g. for derivatives not issued by the tortfeasor, c.f. *Hellgardt*, in: Assmann/Schneider/Mülbert, Wertpapierhandelsrecht, 7th Ed. 2019, § 97, 98 WpHG para 64, 73; *Meschede*, ZIP 2007, 215, 216 ff.; e.g. for the liability of the executives, who are not subject to liability under Sections 97, 98 WpHG, cf. *Wagner*, in: Münchener Kommentar zum BGB, 7th ed. 2017, § 826 para 112.

DECLARATION OF GERHARD WAGNER ISO MOTION TO DISMISS
CASE NO. 2:19-cv-00986-FMO-SK

Gibson, Dunn & Crutcher LLP

violating the standards of good morals and fair dealing.[22] Liability under Section 826 BGB attaches to the executives within the corporate entity who intentionally mislead the capital markets. This personal liability is then transferred to the corporation by Section 31 BGB.[23]

26. Assuming the allegations of the Plaintiff were true, namely that Wirecard and the Individual Defendants knew that the public documents and statements issued in the name of the Company were materially false and misleading, they may be found liable under Section 826 BGB. Whether German courts would include holders of ADR based on Wirecard stock, together with owners of F-shares, into the protective perimeter of Section 826 BGB is, again, a question of first impression,[24] but should be answered in the affirmative. The BGH does not require the tortfeasor to have foreseen the potential victim.[25] Even if the board members of Wirecard had not anticipated the sale of ADR and OTC transactions in the U.S., this would not a priori exclude these investors from the class of eligible plaintiffs. Rather all investors were protected, regardless whether they legally own Wirecard stock or whether they invested indirectly, through ADRs, and regardless whether they acquired Wirecard shares through exchanges in Germany or OTC abroad.

27. Given that holders of Wirecard ADR should be included into the protective perimeter of Section 826 BGB, their claims could be based on this provision as well.

---

[22] BGH, 19.07.2004, II ZR 402/02, BGHZ 160, 149, 157 = NJW 2004, 2971, 2973 ff.; concurring *Edelmann*, BB 2004, 2031, 2032 f.; *Möllers*, JZ 2005, 75, 76; *Spindler*, WM 2004, 2089, 2091 f.

[23] BGH, 09.05.2005, II ZR 287/02, NJW 2005, 2450, 2451; BGH 04.06.2007, II ZR 173/05, NJW-RR 2007, 1532, 1533 para 11; BGH, 28.11.2005, II ZR 80/04, ZIP 2007, 681 para 3; BGH, 04.06.2007, II ZR 147/05, NJW 2008, 76, 77 para 11.

[24] Liability under Section 826 BGB is limited to victims whose interests the underlying duty was meant to protect. Cf. *Wagner*, in: Münchener Kommentar zum BGB, 7th ed. 2017, § 826 para 22.

[25] *Wagner*, in: Münchener Kommentar zum BGB, 7th ed. 2017, § 826 para 112; BGH, 19.7.2004, II ZR 402/02, NJW 2004, 2971, 2973.

**b.      Damages**

28. If Plaintiff succeeded in establishing the liability of the Defendants, he would be entitled to full compensation, i.e. recovery of his total financial losses. While the German law of damages differs from its U.S. counterpart when it comes to the details, the basic principles are identical. German law follows the principle of full compensation and requires the injurer to place the victim in a position equivalent to the one the victim would have been in but for the injury (Section 249 BGB).[26] While it is true that the German law of damages restricts the recoverability of non-pecuniary losses (cf. Section 253 BGB) and does not offer punitive damages, there are no restrictions on the recoverability of financial losses, which are at issue here. Irrespective of the specific claim on which liability for misinformation of investors is based – Sections 97, 98 WpHG, Sections 823 (2) BGB, 400 AktG, 331 HGB, or Section 826 BGB – two alternative options to calculate damages are available.[27]

29. On one hand damages may be assessed as the difference between the actual price at which the investor acquired or sold the securities, and the hypothetical price at which the claimant would have acquired or sold them without the misinformation (so-called "Kursdifferenzschaden" or out-of-pocket loss). Here, the relevant causation requirement is subject to debate.[28] On the other hand, the investor could recover the full purchase price in exchange for the transfer of the securities to the

---

[26] *Wagner*, Karlsruher Forum 2006: Schadensersatz – Zwecke, Inhalte, Grenzen, 2006, p. 12 ff.

[27] *Wagner*, in: Münchener Kommentar zum BGB, 7th ed. 2017, § 826 paras 113 f.; *Fleischer*, NJW 2003, 2584, 2585 f.; *Hellgardt*, in: Assmann/Schneider/Mülbert, Wertpapierhandelsrecht, 7th Ed. 2019, § 97, 98 WpHG paras 120 ff.; BGH, 13.12.2011, XI ZR 51/10, NJW 2012, 1800 paras 47 ff.

[28] BGH, 13.12.2011, XI ZR 51/10, NJW 2012, 1800 paras 47 ff. concerning Sections 97, 98 WpHG (ex §§ 37b, 37c WpHG); but see BGH, 28.11.2005, II ZR 264/04, NZG 2007, 346 para 9 concerning Section 826 BGB; see also *Hellgardt*, in: Assmann/Schneider/Mülbert, Wertpapierhandelsrecht, 7th Ed. 2019, § 97, 98 WpHG paras 122 ff., 166; *Wagner*, in: Münchener Kommentar zum BGB, 7th ed. 2017, § 826 paras 113 f.

DECLARATION OF GERHARD WAGNER ISO MOTION TO DISMISS
CASE NO. 2:19-cv-00986-FMO-SK

Gibson, Dunn & Crutcher LLP

issuer or, where the investor has already sold the securities, to recover the full purchase price less the sales price (so-called "Vertragsabschlussschaden" or rescission damages). Here, the Plaintiff must establish a causal link between the misinformation and the transaction, i.e. his or her decision to (dis-)invest in the respective securities. The latter approach to causation and damages is available for all three causes of action discussed above.[29]

### 3. Adequacy of the Procedural Framework

#### a. Differences and Commonalities of U.S. and German Civil Procedure

30. American and German civil procedure share common values and pursue common goals. They are both designed to ensure the enforcement of valid claims and the denial of those claims that turn out to be unfounded.[30] In doing so, German civil practice observes basic norms of procedural fairness such as the right to present one's case, the right of access to evidence and the right to be heard.[31] Working from the foothold of the constitutionally protected right to be heard,[32] Germany's Federal Constitutional Court (Bundesverfassungsgericht – "BVerfG"), in its jurisprudence, has developed a broad range of procedural guarantees protecting the individual such as the right of access to justice (Justizgewährungsanspruch)[33] and the principle of

---

[29] *Hellgardt*, in: Assmann/Schneider/Mülbert, Wertpapierhandelsrecht, 7th Ed. 2019, § 97, 98 WpHG paras 122, 140, 164 f.; *Wagner*, in: Münchener Kommentar zum BGB, 7th ed. 2017, § 826 para 113 f.; *Fleischer*, NJW 2003, 2584, 2585 f.; BGH, 13.12.2011, XI ZR 51/10, NJW 2012, 1800 paras 47 ff.; BGH, 28.11.2005, II ZR 264/04, NZG 2007, 346 para 9.

[30] C.f. *Vollkommer*, in: Zöller, Zivilprozessordnung, 32. Ed. 2018, Einleitung para 39.

[31] BVerfG, 21.2.2001, 2 BvR 140/00, NJW 2001, 2531: "Insbesondere müssen die Beteiligten einer bürgerlichen Rechtsstreitigkeit die Möglichkeit haben sich im Prozess mit tatsächlichen und rechtlichen Argumenten zu behaupten."

[32] Art. 103 (1) of the German Constitution – Grundgesetz (GG).

[33] BVerfG, 30.04.2003, 1 PBvU 1/02, BVerfGE 107, 395, 406 f.; for an overview cf. *Vollkommer*, in: Zöller, Zivilprozessordnung, 32. Ed. 2018, Einleitung paras 48 ff.

Gibson, Dunn & Crutcher LLP

equal treatment (Waffengleichheit).[34] The obvious objective of these guarantees is to ensure procedural fairness at every level.

31. The major differences between American and German civil procedure are the absence of jury trials from German civil practice and the involvement of a single judge or a judicial panel in every aspect of the case. In Germany, the judge combines the functions of case manager, fact-finder and decision-maker in one person. Because the judge is in control of the fact-finding process, pre-trial discovery is not necessary for a lawsuit to develop. During oral hearings, the judge is the master of the case and the person who questions witnesses, orders the production of documents, commissions experts, etc. Of course, counsel are entitled to present documents and other means of evidence and to examine witnesses and experts, and they also retain the right to petition the court to gather further evidence. The court must allow such petitions, save for cases of outright abuse.[35]

32. The following summarizes the standards for pleading, fact gathering and proof under German law, which show that German civil practice offers a fair trial for the parties.

**b.      Pleading Standards**

33. German civil practice follows the principle of fact pleading rather than notice pleading.[36] It is upon both parties, in their statements of claim and defense, to submit the facts that are relevant for the resolution of the dispute. With a view to cases where the relevant information is distributed asymmetrically between the parties, German

---

[34] BVerfG, 25.07.1979, 2 BvR 878/74, BVerfGE 52, 131, 147; see also BVerfG, 30.01.1985, 1 BvR 99/84, BVerfGE 69, 126, 140; BVerfG, 20.04.1982, 1 BvR 1242/81, BVerfGE 60, 248, 254; BVerfG, 25.10.2002, 1 BvR 2116/01, NJW 2003, 1655; BGH, 19.10.1999, XI ZR 308/98, NJW 2000, 143, 145; c.f. *Vollkommer*, in: Zöller, Zivilprozessordnung, 32. Ed. 2018, Einleitung para 102.

[35] BVerfG, 31.10.1990, 2 BvR 183/90, NJW 1991, 285, 286; BGH, 29.1.1992, VIII ZR 202/90, NJW 1992, 1768, 1769; c.f. *Greger*, in: Zöller, Zivilprozessordnung, 32. Ed. 2018, Vor § 284 paras 8 ff.

[36] *Rosenberg, Schwab & Gottwald*, Zivilprozessrecht, 17th Ed. 2010, § 95 para 18 ff.

civil practice operates with a flexible pleading standard that takes the ability of the parties to access relevant information into account. Where the plaintiff is in a poor position to specify his pleadings because the relevant information is within the control of the defendant, the courts have avoided the frustration of valid claims by reversing the burden of pleading to the benefit of the lesser informed party (so-called "sekundäre Behauptungslast").[37] Where one party is unable to access the relevant information, it is for the better-informed party to plead the facts and disclose the information under its exclusive control.

### c. Witnesses

34. German courts may order witnesses domiciled in Germany to appear in court and to testify.[38] With respect to witnesses who are domiciled outside of Germany but within the EU, German courts can also compel testimony through a system of judicial cooperation between EU Member States.[39] During the oral hearing, the witness must testify truthfully and comprehensively.[40] In the absence of privilege,[41] a witness who

---

[37] BGH, 19.12.1953, II ZR 27/53, BGHZ 12, 49, 50; BGH, 01.12.1982, VIII ZR 279/81, BGHZ 86, 23, 29; BGH, 17.03.1987, VI ZR 282/85, BGHZ 100, 190, 195; BGH, 07.12.1998, II ZR 266/97, NJW 1999, 579, 580; BGH, 19.04.1999 II ZR 331/97, NJW-RR 1999, 1152; *Greger*, in: Zöller, Zivilprozessordnung, 32. Ed. 2018, Vor § 284 para 34.

[38] Section 377 (2) (No. 3) ZPO.

[39] Council Regulation (EC) No 1206/2001 of 28.5.2001 on cooperation between the courts of the Member States in the taking of evidence in civil or commercial matters, OJ L 174 of 27.6.2001, p. 1 ff.

[40] Cf. Section 395 ZPO.

[41] There are exceptions to the duty to testify but these are carefully and narrowly defined. For example, priests, journalists and doctors need not disclose information learned in the course of their professional dealings (Section 383 No. 4 – 6 ZPO), and spouses and relatives of the parties may not be compelled to testify (Section 383 No. 1 – 3 ZPO). The law also grants privileges with respect to particular questions only, i.e. those that would subject the witness to criminal prosecution or to civil liability or involve the disclosure of a commercial secret (Section 384 ZPO).

Gibson, Dunn & Crutcher LLP

16

DECLARATION OF GERHARD WAGNER ISO MOTION TO DISMISS
CASE NO. 2:19-cv-00986-FMO-SK

refuses to testify is subject to sanctions, including a fine or imprisonment.[42] Perjury and other categories of failure to tell the truth are prosecuted as public crimes.[43] Like many other legal systems, German law draws a distinction between the parties to the litigation and third-party witnesses, limiting the evidentiary role of the parties. The basic rationale behind this distinction is that parties have an economic and/or personal stake in the outcome of the litigation and are thus a particularly unreliable source of evidence.[44] However, the ZPO does not exclude the testimony of the parties altogether. A party may testify to further his or her cause where some evidence has already been submitted, § 448 ZPO. Where the party bearing the burden of proof intends to introduce the other party's testimony, Section 445 ZPO allows such applications, provided that other means of evidence are not available.

### d. Document Production

35. Even though German civil practice does not provide for broad discovery of documents, the courts are vested with the power to order the production of documents that are in the possession of the litigants or even third parties (Section 142 ZPO).[45] German courts have considerable discretion as to the required degree to which a document must be described by the party before they order its production.[46] If an order for document production directed against one of the litigants is not complied

---

[42] Section 390 ZPO. The court may order that the witness bear the costs of the wasted hearing, together with the payment of a fine for non-compliance. As a matter of last resort, the recalcitrant witness may even be taken into custody for up to six months. Cf. Sections, 380 (1), 390 (1), 913 ZPO.

[43] Sections 153 ff. German Penal Code (Strafgesetzbuch – StGB).

[44] *Schreiber*, in: Münchener Kommentar zur ZPO, 5th Ed. 2016, § 445 para 1.

[45] C.f. *Greger*, in: Zöller, Zivilprozessordnung, 32. Ed. 2018, § 142 paras 6 ff.; *Wagner*, JZ 2007, 706; *idem*, Festschrift für Dieter Leipold, 2009, p. 801 ff.

[46] *Stadler*, in: Musielak/Voit, Zivilprozessordnung, 16th Ed. 2019, § 142 para 4a.

DECLARATION OF GERHARD WAGNER ISO MOTION TO DISMISS
CASE NO. 2:19-cv-00986-FMO-SK

Gibson, Dunn & Crutcher LLP

with, the court will draw adverse inferences from such refusal when weighing the evidence.[47]

36. In addition to the mechanism of Section 142 ZPO, there is a growing body of statutory rules within the substantive law granting one party disclosure rights against its better informed counterpart.[48] These statutory duties to disclose must be read in tandem with procedural provisions which authorize the court to order the production of documents where this is required by the substantive law.[49]

37. With regard to documents under the control of a government authority, the powers of a German court are even broader. The German Constitution requires public courts as well as other government authorities to provide mutual assistance to each other.[50] The civil court may turn directly to a sister court or government authority and request the submission of documents and the disclosure of other relevant information, provided that such documents and information are relevant to the facts specifically pled by a party.[51] Consequently, a civil court based in Germany would be authorized to request, directly from the prosecutor's office, the production of the file that is compiled in the course of an investigation.[52] In doing so, the civil court could take advantage of the information gathered with the help of search warrants and the exercise of the police powers vested in the public prosecutor. The competent court in

---

[47] Where the order is directed at third parties, the same privileges that limit the duty of witnesses to provide oral testimony and the same sanctions for groundless refusal apply, see above Fn. 46.

[48] C.f. *Greger*, in: Zöller, Zivilprozessordnung, 32. Ed. 2018, § 422 para 2.

[49] Sections 422, 425 ZPO.

[50] Art. 35 (1) German Constitution (Grundgesetz – GG) reads: "All federal or state authorities shall provide legal and administrative assistance to each other." ("Alle Behörden des Bundes und der Länder leisten sich gegenseitig Amtshilfe.").

[51] Section 273 (2) (No. 2), Section 358a (No. 2) ZPO; c.f. *Greger*, in: Zöller, Zivilprozessordnung, 32. Ed. 2018, § 273 paras 7 f.

[52] Sections 474 (1), 478 (1) Code of Penal Procedure (Strafprozessordnung – StPO).

Germany may also request the presentation of a file that was prepared by the German Federal Financial Services Authority (Bundesanstalt für Finanzdienstleistungsaufsicht – "BaFin") provided that the court determines that such information is relevant to the facts specifically pled by a party.[53]

38. It is also my understanding that, in this case, the witnesses and evidence largely are based in Germany. Thus, based on my experience, it would likely be far less expensive to litigate this action in a German Court, utilizing the applicable procedural and substantive law of Germany, than it would to litigate the case in the United States.

### 4. No Recognition and Enforcement of an American Judgment in Germany

39. If a court in the United States were to render a judgment against the Defendants, such judgment would not be recognized and enforced in Germany because German law grants domestic courts exclusive jurisdiction over this matter. Unless a foreign judgment is declared enforceable by a German court, it does not unlock the enforcement mechanism. The declaration of enforceability, in turn, requires that the foreign judgment qualifies for recognition in Germany.[54]

### a. The Mirror-Image Rule

40. In the present case, Section 328 (1) (No. 1) ZPO poses a serious obstacle in the way of recognition of a hypothetical U.S. judgment against the Defendants. Where the recognition and enforcement of a judgment rendered by a court outside the EU is at issue, Section 328 (1) (No. 1) ZPO applies and requires a "mirror-image" test. Recognition of a non-German judgment turns on whether the court that rendered the

---

[53] Sections 4 and 5 Administrative Procedure Act (Verwaltungsverfahrensgesetz – VwVfG).

[54] Sections 723 (2) (cl. 2), 328 ZPO.

DECLARATION OF GERHARD WAGNER ISO MOTION TO DISMISS
CASE NO. 2:19-cv-00986-FMO-SK

Gibson, Dunn &
Crutcher LLP

judgment would have had jurisdiction under the applicable German rules.[55] In the case at hand, a German judge charged with the decision to declare enforceable a judgment of a U.S. court would have to assume that the ZPO applied in the U.S. and then ask whether the court located there had jurisdiction. As will be shown below, the answer would have to be: "no."

### b.    Section § 32b ZPO

41. Within the mirror-image test required by Section 328 (1) (No. 1) ZPO, the German – not the European – rules on jurisdiction apply.[56] Damages claims for losses suffered on the capital markets are governed by Section 32b ZPO which vests jurisdiction exclusively in the courts at the seat of the relevant party.[57] Section 32b (1) ZPO provides in relevant part:

"For complaints in which (1) the compensation of damages caused by false or misleading public capital market disclosures, or caused by the failure to make such disclosure, or. . . is being asserted, that court shall have exclusive jurisdiction that is located at the registered seat of the issuer concerned, of the offeror concerned of other capital investments, or of the targeted company, where said registered seat is situated within Germany and the complaint is directed, at least also among others, against the issuer, the offeror, or the targeted company."[58]

---

[55] "Wenn die Gerichte des Staates, dem das ausländische Gericht angehört, nach den deutschen Gesetzen nicht zuständig sind."

[56] BGH, 3.12.1992, IX ZR 229/91, BGHZ 120, 334, 337; BGH, 25.11.1993, IX ZR 32/93, BGHZ 124, 237, 245; BGH, 29.4.1999, IX ZR 263/97,141, 286, 289 f.; *Geimer*, in: Zöller, Zivilprozessordnung, 32. Ed. 2018, § 328 para 102 ff.

[57] Section 32b ZPO was introduced together with the "Act on the Initiation of Model Case Proceedings in Respect of Investors in the Capital Markets" (Kapitalanleger-Musterverfahrensgesetz – KapMuG).

[58] Official translation by the German Ministry of Justice and Consumer Protection, available at http://www.gesetze-im-internet.de/englisch_zpo/englisch_zpo.html#p0115 . The relevant German text reads: „Für Klagen, in denen 1. ein Schadensersatzanspruch wegen falscher, irreführender oder unterlassener öffentlicher Kapitalmarktinformation, … geltend

42. Following statements in the legislative materials, the BGH has made it clear repeatedly that Section 32b ZPO is not limited to particular causes of action or to securities admitted to trading on regulated capital markets. It covers not only law suits based upon Sections 97, 98 WpHG, but any kind of damages claim that is based on an alleged manipulation of capital markets, including those brought under the general law of delict, notably Sections 826 and 823 (2) BGB.[59]

43. In the case at hand Defendants are being sued for compensation for losses allegedly caused by manipulation of the stock market price for Wirecard stock through misinformation of investors and failure to disclose relevant information to the capital markets. Thus, the courts at the seat of the relevant issuer have exclusive jurisdiction while all other courts are divested of jurisdiction they would otherwise have. The Individual Defendants are natural persons but nonetheless subject to Section 32b ZPO. It is unanimously accepted that the directors of the management board of the corporation whose liability is in question must be sued before the same court as the corporate "issuer" where they served.[60]

### c. Section § 32b ZPO includes International Jurisdiction

44. The general principle is that the rules of the ZPO on jurisdiction serve a double function in the sense that they not only designate venue within Germany but also allocate international jurisdiction, i.e. the jurisdiction of the German judicial system

---

gemacht wird, ist das Gericht ausschließlich am Sitz des betroffenen Emittenten, des betroffenen Anbieters von sonstigen Vermögensanlagen oder der Zielgesellschaft zuständig, wenn sich dieser Sitz im Inland befindet und die Klage zumindest auch gegen den Emittenten, den Anbieter oder die Zielgesellschaft gerichtet wird."

[59] Bill of the KapMuG, BT-Drucks. 15/5091, p. 20, 33 f.; BGH, 10.06.2008, XI ZB 26/07, NZG 2008, 592 para 12; BGH, 30.1.2007, X AZR 381/06, NJW 2007, 1364, para 10; BGH, 7.2.2007, X ARZ 423/06, NJW 2007, 1365 para 11; *Vollkommer*, NJW 2007, 3094; *H. Roth*, in: Stein/Jonas, Zivilprozessordnung, 23. Ed. 2014, § 32b paras 6, 8; *Bachmann*, IPRax 2007, 77, 85; *Patzina*, in: Münchener Kommentar zur ZPO, 5th Ed. 2016, § 32b paras 3, 4.

[60] Bill of KapMuG, BT-Drucks. 15/5091, p. 33; *Schultzky*, in: Zöller, Zivilprozessordnung, 32. Ed. 2018, § 32b paras 6, 7a; *Bachmann*, IPRax 2007, 77, 85; *Patzina*, in: Münchener Kommentar zur ZPO, 5th Ed. 2016, § 32b para 4.

over a defendant, vis-à-vis the powers of the courts of other jurisdictions.[61] As the wording of Section 32b (1) ZPO ("where said registered seat is situated within Germany") indicates, the framers were well aware of the problems of international jurisdiction. While Germany cannot determine jurisdiction with respect to non-German corporate defendants which are sued in a non-German court, the German lawmakers retain the power to accord German courts international jurisdiction over lawsuits brought against defendants domiciled in Germany. This is precisely what Section 32b ZPO was intended to do; the lawmakers wanted to create exclusive jurisdiction in Germany for all claims brought against German corporate entities sounding in capital markets fraud.

45. As a consequence, the application of Section 32b ZPO does not depend on the substantive law governing the alleged liability nor is it relevant where the transactions involving securities issued by a German-based corporation took place.[62] It applies to any claim which is based on the manipulation of the price of stock that is traded on German markets, such as Wirecard common shares, and even reaches cases where the securities were traded on a non-German capital market, provided only that the

---

[61] BGH, 14.06.1965, GSZ 1/65, BGHZ 44, 46; BGH, 21.10.1992, XII ZR 182/90, BGHZ 119, 392, 393; 21.11.1996, IX ZR 148/95, BGHZ 134, 116, 117; BGH, 3.12.1992, IX ZR 229/91, BGHZ 120, 334, 337; BGH, 2.3.2010, VI ZR 23/09, BGHZ 184, 313 para 7; *H. Roth*, in: Stein/Jonas, Zivilprozessordnung, Vol. 1, 23rd ed. 2014, vor § 12 para 32b. Some legal commentators have argued that Section 32b ZPO is limited to designating venue and does not extend to international jurisdiction. *See Heinrich*, in: Musielak/Voit, Zivilprozessordnung, 16th Ed. 2019, § 32b para 7; leaning towards this position *Patzina*, in: Münchener Kommentar zur ZPO, 5th Ed. 2016, § 32b para 11. However, this argument is not persuasive, and the dominant opinion holds otherwise. *See Bachmann*, IPRax 2007, 77, 83 ff.; *Haß/Zerr*, RIW 2005, 721, 727; *von Hein*, RIW 2004, 602, 606 ff.; *Hess*, AG 2006, 809, 815; *Reuschle*, WM 2004, 2334, 2343; *Parigger*, in: Vorwerk/Wolf, KapMuG, 2nd Ed. 2020, § 32b ZPO para 16; *Schütze/Reuschle*, in: Assmann/Schütze, Handbuch des Kapitalanlagerechts, 4th Ed. 2015, § 25 para 144.

[62] *von Hein*, RIW 2004, 602, 609; *Haß/Zerr*, RIW 2005, 721, 726; *H. Roth*, in: Stein/Jonas, Zivilprozessordnung, 23rd Ed. 2014, § 32b Rn. 6; *Bachmann*, IPRax 2007, 77, 85.

DECLARATION OF GERHARD WAGNER ISO MOTION TO DISMISS
CASE NO. 2:19-cv-00986-FMO-SK

Gibson, Dunn & Crutcher LLP

issuer has its seat in Germany.[63] Here, Plaintiff's claims are plainly based on the alleged manipulation of Wirecard stock, traded under the ticker symbol WDI on German exchanges. Plaintiff alleges the value of the unsponsored ADRs sold under the ticker symbol WCAGY and the F-shares sold on the OTC Markets platform in the U.S. under the ticker symbol WRCDF reflects the price of Wirecard stock traded under the ticker symbol WDI in Germany. The gist of Plaintiff's action is that executives of Wirecard manipulated the price of the WDI shares traded on German exchanges, and thus indirectly manipulated the price of the WCAGY and WRCDF securities. As the German legislators intended to "channel" proceedings in cases involving misinformation of capital markets by a German public company to the court at its seat,[64] venue is proper there.

46. With regard to all Defendants, Section 32b ZPO vests exclusive jurisdiction in the German courts.  Therefore, a judgment rendered outside of a German court would not be enforceable in Germany.

## C.   Governmental Interest

### 1.   Germany's Strong Interest in Having its Substantive Law Applied

47. Germany has a strong governmental interest in having disputes involving the misinformation of capital markets by German public companies resolved under German law. The statutory provisions introducing special liability for damages caused by the misinformation of capital markets were introduced in July 2002 as part of Germany's Fourth Financial Market Promotion Act (Viertes Finanzmarktförderungsgesetz).[65] The purpose of the Act is explained in the bill that formed the basis of deliberation in the German parliament: "It is the primary goal of

---

[63] *Hein*, RIW 2004, 602, 609; *Haß/Zerr*, RIW 2005, 721, 726.

[64] See below, SectionC.2. Germany's Strong Interest in Having Claims Adjudicated by German Courts.

[65] For an overview cf. *Tielmann/Heppe*, 37 Int'l Law 191.

DECLARATION OF GERHARD WAGNER ISO MOTION TO DISMISS
CASE NO. 2:19-cv-00986-FMO-SK

Gibson, Dunn & Crutcher LLP

this bill to strengthen the capital markets of Germany and to increase their competitiveness across Europe and the world."[66]

48. In their effort to strengthen the German financial markets, the lawmakers did not confine themselves to setting new regulatory standards, but also touched upon issues of liability. In this regard, the bill introducing the Act sets out:

> "The last several years have shown an increasing amount of misbehavior of market participants that went unsanctioned. [...] Confidence in the integrity and functioning of a financial market is an important factor affecting its quality for business and a prerequisite for favorable terms for companies to raise capital. This confidence must be strengthened."[67]

> "[...] Against this background, the current bill aims at ... - Strengthening investor protection by increasing the transparency of securities markets and by creating the prerequisites for enforcing the prohibition of market manipulations and abuses of ad hoc disclosures."[68]

49. The new special statutory provisions were seen as an "important change" to the pre-existing law.[69] German lawmakers wanted to ensure better protection of investors, but also to generate incentives for public corporations to comply with their duties to

---

[66] BT-Drucks. 14/8017, p. 62: "Der vorliegende Gesetzentwurf hat zum Ziel, den Finanzplatz Deutschland und seine Wettbewerbsfähigkeit in Europa und der Welt zu stärken."

[67] BT-Drucks. 14/8017, p. 62: "Auch zeigte sich in den letzten Jahren verstärkt Fehlverhalten von Marktteilnehmern, das nicht ausreichend sanktioniert wurde. [...] Vertrauen in die Integrität und Funktionsfähigkeit des Finanzmarktes ist aber ein bedeutsamer Faktor der Standortqualität und Voraussetzung für eine kostengünstige Kapitalaufnahme der Unternehmen. Dieses Vertrauen gilt es zu stärken."

[68] BT-Drucks. 14/8017, p. 62 f..: "[...] Vor diesem Hintergrund ist es das Ziel des Gesetzentwurfs, [...] den Anlegerschutz zu stärken, indem die Transparenz auf den Wertpapiermärkten erhöht und die rechtlichen Voraussetzungen dafür geschaffen werden, das Verbot der Kurs- und Marktmanipulation und des Missbrauchs von Ad-hoc-Meldungen durchzusetzen."

[69] BT-Drucks. 14/8017, p. 63, referring to the draft of Sections 37b and 37c WpHG – now Sections 97, 98 WpHG.

Gibson, Dunn & Crutcher LLP

24

DECLARATION OF GERHARD WAGNER ISO MOTION TO DISMISS
CASE NO. 2:19-cv-00986-FMO-SK

timely and adequately inform market participants.[70] In this regard, the general rule on liability for pure economic loss, i.e., Section 826 BGB, shares the same functions as the special rules of the Securities Trading Act.[71] The functional nexus between the general law of delict and the special statutory provisions is acknowledged in the Securities Trading Act itself, which explicitly preserves the right to rely on the general law of delict, but only where intentional wrongdoing is at issue.[72]

50. It is not only Germany, but the EU, who engage actively in preventing market manipulation. This is apparent from the wording of Article 1 of the Market Abuse Regulation, which, in Article 17, imposes disclosure requirements that are enforced by Sections 97, 98 WpHG:

> *"This Regulation establishes a common regulatory framework on ... market manipulation as well as measures to prevent market abuse to ensure the integrity of financial markets in the Union and to enhance investor protection and confidence in those markets." This is in the EU's interest, because "the smooth functioning of securities markets and public confidence in markets are prerequisites for economic growth and wealth. Market abuse harms the integrity of financial markets and public confidence in securities and derivatives."[73]*

51. In summary, Germany and the EU have a strong governmental interest in seeing its law applied to cases, like this one here, involving alleged manipulation, by a German (and also European) corporation, of the capital markets and alleged misinformation of investors.

---

[70] BT-Drucks. 14/8017, p. 64.

[71] The functions of Section 826 BGB are discussed at *Wagner*, in: Münchener Kommentar zum BGB, 7th Ed. 2017, § 826 paras 4, 12, 48, 108 ff.

[72] Sections 97 (4) and 98 (4) WpHG.

[73] Recital 2 of the Market Abuse Regulation.

DECLARATION OF GERHARD WAGNER ISO MOTION TO DISMISS
CASE NO. 2:19-cv-00986-FMO-SK

Gibson, Dunn & Crutcher LLP

## 2.      Germany's Strong Interest in Having Claims Adjudicated by German Courts

52. Germany's governmental interest in the current matter is not limited to the substantive law. Rather, it also extends to the procedural law and to choice of forum. German lawmakers have made clear their intention to have damages claims against German defendants relating to alleged manipulation of capital markets adjudicated in Germany. Section 32b ZPO was specifically designed to reserve for German courts exclusive jurisdiction over suits involving the behavior of German corporations on the financial markets and to prevent forum shopping.[74] During the legislative process, the then-incumbent Secretary of Justice declared in public that the German government intended the Act to protect the "regulatory function" of the German law of civil procedure from being pushed aside.[75]

53. Pursuant to the reasoning in the legislative materials, the lawmakers intended to concentrate jurisdiction with the court at the seat of the respective issuer or other responsible party in order to avoid a panoply of competent courts. The reasons underlying this decision reflect the purposes of the Act in general, including the concern for procedural efficiency:

> "The rule proposed in the Bill works against the fragmentation of territorial jurisdiction which would otherwise result from the competition between the fora at the seat of the defendant, at the place of the harmful act or at the place where

---

[74] Bill to the KapMuG, BT-Drucks. 15/5091, p. 13, 17; cf. also *Möllers/Weichert*, NJW 2005, 2737, 2738; *Bachmann*, IPRax 2007, 77, 84; *Reuschle*, WM 2004, 966, 973.

[75] Zypries, ZRP 2004, 177, 178: "Sie schafft Anreize, dass Anleger vor deutschen Gerichten klagen und nicht im Wege des forum shoppings auf andere Staaten ausweichen. Damit wird der Verlust der Steuerungs- und Regulierungsfunktion des deutschen Prozessrechts im Bereich von kapitalmarktrechtlichen Streitigkeiten vermieden."

Gibson, Dunn & Crutcher LLP

*assets are located, competent under the general rules on international jurisdiction.*"[76]

54. Furthermore, the legislative materials repeatedly emphasized the importance of "channeling" proceedings in cases involving misinformation of capital markets to the court at the seat of the relevant issuer.[77] Even though the lawmakers acknowledged that the policy of channeling cannot reach non-German defendants, their idea to implement this policy with regard to German defendants remained uncompromised.

55. In summary, the German lawmakers have made very clear their intention to have damages claims against German defendants which relate to alleged manipulation of capital markets adjudicated in Germany.

---

[76] Bill to the KapMuG, BT-Drucks. 15/5091, p. 33: "Durch den neuen ausschließlichen Gerichtsstand wird bei Schadensersatzklagen wegen falscher öffentlicher Kapitalmarktinformationen aller Voraussicht nach nur ein Sachverständigengutachten erforderlich sein, um die beweiserheblichen Behauptungen zu klären. Dies führt zur Beschleunigung des Verfahrens und bewirkt eine erhebliche Kostenersparnis für alle Beteiligten. [...] Die vorgeschlagene Regelung wirkt, soweit regelbar, auch einer Zersplitterung der örtlichen Zuständigkeiten auf Grund verschiedener Gerichtsstände entgegen, die sich aus den ansonsten in Betracht kommenden Gerichtsständen des Sitzes des Beklagten, der unerlaubten Handlung oder des Vermögens nach internationalem Zivilprozessrecht ergeben könnten."

[77] Bill to the KapMuG, BT-Drucks. 15/5091, p. 13, 17, 23, 25, 47.

DECLARATION OF GERHARD WAGNER ISO MOTION TO DISMISS
CASE NO. 2:19-cv-00986-FMO-SK

Gibson, Dunn & Crutcher LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on this 6th day of March, 2020, in _Berlin_, Germany.

By: _____

Gerhard Wagner

28
DECLARATION OF GERHARD WAGNER ISO MOTION TO DISMISS
CASE NO. 2:19-cv-00986-FMO-SK